## The People *vs.* Joseph Damon.

A juror who, *after he is sworn in chief* and has taken his seat, is discovered to be incompetent to serve, may, in the exercise of a sound discretion, be set aside by the court at *any time before evidence is given ;* and this may be done even in a *capital case,* and as well for cause existing *before* as *after* the juror was sworn.

A person whose opinions are such as to preclude him from finding a defendant guilty of an offence punishable with death, is an incompetent juror on the trial of an indictment for an offence subjecting to that punishment; it is not the opinions on this subject of the *religious denomination* to which he belongs which exclude him, but his own opinions ; and therefore, if he entertains them, though he does not belong to a religious denomination, he is incompetent to serve as a jury.

The prisoner, Joseph Damon, was tried at the Chautauque oyer and terminer, on an indictment for murder. On the empanneling of the petit jury for the trial of the prisoner, *after* the fourth juror had been *sworn in chief* and taken his seat, the district attorney inquired of him whether he had conscientious scruples against finding a verdict of guilty for an offence punishable with death. The counsel for the prisoner objected that the inquiry was too late—that after the juror was sworn in chief, he could not be objected to. The court overruled the objection, and the juror being sworn to answer inquiries, stated that he *belonged to a religious denomination who had scruples of conscience against finding a verdict of guilty in a case punishable with death,* and *that he had such scruples.* He was set aside by the court. Another juror was drawn, who, at the request of the district attorney, was sworn to answer such questions as should be put to him touching *his conscientious scruples* against finding a verdict of guilty for an offence punishable with death, and, on inquiry, answered that *he* had such scruples. The counsel for the prisoner insisted that the statute prohibiting jurors in such cases from serving, required that the *jurors* so to be prohibited *should belong to a religious denomination whose opinions are such as to preclude them from finding any defendant guilty of an offence punishable with death.* The court decided that the *individual opinions of the juror*

were the *proper subject* of inquiry. The juror stated that he *belonged to a religious denomination*, and that *he* had conscientious scruples against finding a verdict of guilty in a case punishable with death ; that the opinion he thus entertained was not general among the members of the religious denomination to which he belonged, and such opinion was not a distinguishing tenet of that denomination, but that it was the opinion of some others as well as his own. The court set him aside. A third juror was drawn, who stated that *he did not belong to any religious denomination,* but *had scruples against finding a verdict of guilty in a case punishable with death,* and he also was set aside. To these several decisions of the court, excluding the jurors from the panel, the counsel for the prisoner excepted. The panel was then completed by approved jurors, who found the prisoner *guilty.* A case was made for the advice of this court, and the sentence respited.

*J. A. Spencer,* for the prisoner.

*Greene C. Bronson,* (attorney general,) for the people.

*By the Court,* SAVAGE, Ch. J. There are two questions arising in this case : 1. Can a juror be challenged after he is sworn ? 2. Can a juror, who has conscientious scruples against finding a verdict of guilty in a case punishable with death, be allowed to serve as a juror on the trial of an indictment for an offence punishable with death, *unless he belongs to a religious denomination who, as a denomination, entertain such scruples ?*

The regular practice is to challenge jurors as they come to the book to be sworn, and before they are sworn ; but I apprehend this is matter of practice, and may be departed from in the discretion of the court. The object is to give the prisoner a fair trial ; and if it be made to appear, even after a juror is sworn, that he is totally incompetent by reason of having prejudged the case, it is not then too late to set him aside and call another. It is indeed laid down in the old books that it cannot be done. *Hawkins* says a juror cannot be challeng-

ed after he was sworn, unless for some cause which happened after he was sworn, (according to the greater number of authorities,) and cites the year books. 4 *Hawkins*, 387, *ch.* 43. In *Tyndall's case, Cro. Car.* 271, the prisoner challenged the foreman of the jury, but he was sworn by the clerk before the challenge was heard by the court, and therefore without the assent of the attorney general then present; they would not alter the record; and because the attorney general would not consent to alter the record, the challenge was disallowed. In *Wharton's case,* Yelv. 24, upon the arraignment of the prisoner for murder, on the first day eleven jurors appeared and were sworn; one was challenged, and for that time the trial was stayed. Upon a *tales* taken at another day, when the jury appeared, one of the jurors who had been sworn was challenged for cause which existed before he was sworn. Upon a doubt arising among the judges of the king's bench, *Yelverton* went into the common pleas to know their opinion. The opinion was, that the queen could not have the challenge after the juror had been sworn. Another matter of doubt was whether those already sworn should not be sworn over again, and the court held that they must be sworn again. The jury acquitted the prisoner; "wherefore," says the reporter, "Popham, Gawly and Fenner *fuerunt valde irati,* and all the jurors were committed and fined, and bound to their good behavior." In the first of these cases, the reason given for the decision of the court is not one calculated to give us very elevated notions of the criminal justice in the reign of Charles I. Because the attorney general would not consent to alter the record, by striking out the name of one juror and insert another, therefore an incompetent juror must serve. In the second an incompetent juror was permitted to sit, because the attorney general was not aware, until sworn, of his relation to one of the prisoners; and this although they admitted that the oath administered was of no effect, by directing him to be sworn a second time. The verdict was such as should have been expected, and, it would seem, ought not to have called down upon the whole jury the signal vengeance of the court. It must have been a clear case of guilt; and because the court

ALBANY,
Jan. 1835.

The People
*v.*
Damon.

would not exercise a proper discretion in rejecting an incompetent juror, before the jury was completed or the trial commenced, they found themselves called upon to punish the whole jury, who probably were led astray by the improper person who was permitted to be one of their number. *Hawkins* intimates there are authorities the other way ; but I apprehend no authority can be necessary to sustain the proportion, that the court may and should, in its discretion, set aside all persons who are incompetent jurors, *at any time before evidence is given.*

As to the other questions arising upon this case, the statutes of 1801 and 1813 contain this provision : " That no *quaker* or *reputed quaker* shall be compelled to served as a juror upon the trial of any indictment for treason or murder." The reason for this exception was, because the denomination of christians called quakers were known to entertain the opinion that capital punishments are improper ; and the legislature, considering such persons incompetent jurors in the cases specified, declared that they should not be compelled to serve. At the time those laws were passed, it was supposed that such opinions were peculiar to the people called *quakers.* Subsequently, however, the legislature being informed no doubt that the propriety of capital punishment has been denied by many persons other than quakers, have in the revised statutes inserted a provision calculated to reach every case. It is as follows : " Persons of any religious denomination, whose opinions are such as to preclude them from finding any defendant guilty of an offence punishable with death, shall not be compelled or allowed to serve as jurors on the trial of an indictment for any offence punishable with death." 2 *R. S.* 734, § 12. It has been contended that this section embraces those only who belong to a religious denomination holding the opinions in question. The statute should not receive so narrow a construction. It is not the opinions of the denomination which render the juror unfit to serve, but his own opinions. The words " *of any religious denomination,*" I apprehend, were inserted because it was not supposed that such opinions were entertained by any but such as belonged to some denomination. The principle of the statute is, that any

person entertaining such an opinion is unfit to be a juror in such a case, because his conscience will not permit him to find the defendant guilty, when death will be the consequence of the verdict, however conclusive the evidence may be. Such a person is unfit; he has prejudged the question; he has made up his verdict without hearing the evidence, and ought to be excluded upon common law principles. It would be a solemn mockery to go through the forms of a trial with such a jury, or even with one such juror. The prisoner is sure to be acquitted independent of the of the question of guilt or innocence. It would be a misnomer to call such a proceeding a trial.

The oyer and terminer decided correctly, and are advised to render judgment upon the conviction.