Daniels, J. (dissenting).
The plaintiff in error was tried before the Court of Oyer and Terminer, held in Orleans county, upon an indictment charging him with the offense of manslaughter. Various exceptions were taken upon the trial, and after the conviction of the plaintiff in error, a bill of exceptions was made and a writ of error issued, bringing them before this court for its consideration. Several of these exceptions arose upon the empanneling of the jury. The first was taken to the ruling of the court that Nehemiah Gates was a competent juror. Upon being sworn and interrogated, he answered as.follows: “I don’t know as I have formed an opinion. I have formed an opinion if what I heard was true. I believe that what I heard was true.” Upon being cross-examined, he said: “I formed an opinion if what I heard was true. I did not know whether it was true or not.” The opinion which this juror had was merely hypothetical, depending on whether the statements he had heard were true or not *235 which he did not know. Another exception of the same general nature was taken to the ruling concerning the competency of Asa Baldwin. He testified as follows: “I have heard of this cause. I have not thought much about this case since I heard of it. I have read an account of it in the papers. If true, I did form an opinion. I read the account, believed it, and then formed an opinion.” Upon being asked whether he, at the time of the examination, had any fixed opinion upon his mind as to the guilt or innocence of the prisoner, he answered: “I have not.” The state of this juror’s mind was very much like that of Mr. Gates. Whether he had any opinion' depended upon the truth of the statements he had read. But he was able to say decidedly that he had no fixed opinion on the subject of the prisoner’s guilt or innocence. If he had no fixed opinion, it is difficult to understand how he could have any opinion whatever upon the subject, fin-an opinion is a fixed conclusion in the mind, a conviction of a more or less decided character concerning the subject it relates to. If it is not in any way fixed in the mind, it must be a mere conjecture or impression which would leave the mind impartial upon the subject to be investigated. It has accordingly been held that to constitute a ground of principal challenge for cause to a person called as a juror, for an opinion formed, that it must be a fixed or settled opinion. “And nothing short of such an opinion will sustain a challenge to a juror for principal cause.” (People v. Honeyman, 3 Denio, 121, 123.)
The decision of the Court of Appeals in Qancemi’s Oase is no way in conflict with this conclusion. The juror in that case stated that he had formed an opinion, and expressed it, and on cross-examination said that he had no fixed opinion—none which could not be removed by the evidence. It is plain that the juror in this case entertained a fixed opinion. The state of his mind was such that it required evidence to render it impartial. While *236 his opinion would yield to evidence, without it the opinion would remain. He could not have tried the prisoner impartially until that opinion should be removed. He would enter upon the case, if his opinion was against the prisoner, with a conclusion against him, which the prisoner would have to remove before the juror would be prepared to pronounce him innocent. This was directly opposed to the theory of trial by jury, which requires that the jurors shall be entirely impartial upon the case they are required to hear and determine. This juror was held to be incompetent because “ his mind was preoccupied with an opinion upon the issues to be tried, which it would require evidence to remove; and that, upon principle, and by all the cases, incapacitated him for a juror. (16 N. Y., 502, 505.)
The juror in the case of the People v. Mather (4 Wend., 231), testified that he had no fixed opinion other than such impressions as were formed upon printed statements in papers and reports in conversations. But he did have a fixed opinion derived from those sources. That is assumed in his answer; and on that account he was determined to be incompetent. In delivering the opinion of the court in that case, Justice Marct said: “ There is, however, a distinction between positive and hypothetical opinions. It was recognized in the case of Durell v. Mosher (8 John., 445). The court in that case say that the juror had given no decided opinion on the merits; his declaration was hypothetical.” (Idem, 243.)
In the case of Freeman v. The People (4 Denio, 34), it was held that contingent or hypothetical opinions fall short of what is required to maintain a challenge for principal cause. And the same conclusion was declared in People v. Stout (4 Parker, 71, 109). In that case it was held that the opinion to disqualify a juror must be absolute, unconditional, definite and settled, in distinction from one which is hypothetical, conditional, indefinite and uncertain. The mind must be for the time being settled *237 and at rest upon the question of the prisoner’s guilt. Under these authorities there was certainly no impropriety in the ruling that these two jurors were competent to serve as such in this case.
After six jurors had been selected and accepted from the regular panel in attendance npon the court, and twenty-four of the seventy-five drawn as talismen from the box of the town had appeared, the court ordered their names to be placed in the box, and the drawing of the jury to proceed from them. To this the prisoner’s counsel objected, because the entire seventy-five had not then been summoned and returned. The court overruled the objection, and the prisoner’s counsel excepted. There is nothing in the statute under which these jurors were drawn requiring the court to delay the organization of the jury until all those that are drawn shall be summoned and returned (4th R. S., 5th Ed., 648-9). And it is not pretended that the prisoner was in any manner prejudiced in his rights by the omission to do so. And in that case, the rule appears to be settled that any informality or mistake of an officer in drawing a jury, or any irregularity or misconduct in the jurors themselves, will not be a sufficient ground for setting aside a verdict, either in a criminal or civil case, where the court are satisfied that the party complaining has not or could not have sustained any injury from it. (The People v. Ransom, 7 Wend., 416, 424.) The object of drawing the additional jurors was to obtain a sufficient number to form a complete jury; and if that could be done without delaying the trial until all that were to be summoned had appeared, no injury whatever could result to the prisoner by taking that course.
When the juror, Asa Baldwin, was held to be competent to serve, the court asked the prisoner’s counsel if they challenged the said juror peremptorily; to which the counsel replied no. The prosecution declining to challenge the juror peremptorily, he was then directed to and *238 did take Ms seat with the" other eleven jurors, who had previously been selected as jurors in the cause and were then in the box. Afterwards, and before the juror was sworn, or commenced to be sworn, and while the other jurors were being sworn, the prisoner’s counsel insisted upon peremptorily challenging the said juror, his peremptory challenges being then unexhausted. But the court decided not to allow the challenge to be made, on the ground that the counsel for the prisoner had waived his right by refusing to do so when asked by the court if they would so challenge Mm before he was directed to take his seat in the jury box. The prisoner’s counsel excepted to this ruling. It is now insisted, on the part of the prisoner, that the refusal to challenge the juror peremptorily when an opportunity to do so was expressly given him before the juror took his seat in the jury box, was no waiver of his right to do so afterwards, before he was sworn. The refusal to challenge the juror peremptorily was decided and explicit—not that he would not be challenged then, but that he would not be challenged peremptorily by the prisoner’s counsel. And no reason was suggested at the trial on the part of the prisoner, when the juror ,was about being sworn, rendering it proper that he should then be permitted to avail himself of the right he had so distinctly renounced before. In the absence of any different understanding at the trial, the right to make peremptory challenges will continue until the jurors are sworn. That is essential to the proper and perfect maintenance of the right itself. But when a different course is adopted by which the exercise of the right is to be made at a particular time, in no manner prejudicial to any other privilege secured to the prisoner, his right to make peremptory challenges is in no way impaired. If he desires to peremptorily challenge a particular juroi an ample opportunity for doing so is secured to him; and that, too, after his challenges for cause, or to the favor, *239 may have been made, which is all that he reasonably or justly has any right to demand. His peremptory challenges are as completely and effectually preserved and secured in that manner as they would be by allowing them to be made at any time before the jurors are sworn. In the case of The People v. Damon (13 Wend., 351), Savage, Chief J., delivering the opinion of the court, stated that “ the regular practice is to challenge jurors as they come to the book to be sworn; but I apprehend this is matter of practice, and may be departed from in the discretion of the court.” In this case no objection was raised to that course, when the defendant was required to make the challenge if he proposed to do so; but, on the other hand, both himself and his counsel apparently acquiesced in the propriety of the practice adopted in this case.
There is nothing contained in the statute, conferring the right upon the prisoner to make peremptory challenges, requiring that the time for making them should be prolonged to the actual swearing of the juror. It provides that every person put on trial for any offense punishable with death, or imprisonment in a State prison ten years or any longer time, shall be entitled to peremptorily challenge twenty of the persons drawn as jurors for his trial; and every person put on trial for any offense not punishable with death, or imprisonment in State prison for ten years or a longer time, shall he entitled peremptorily -to challenge five of the persons drawn as jurors for the trial. (3 R. S., 5th ed., 1027, §§ 9, 10.) This provides no particular period at or during which the challenges may be made, except that it must be after the person challenged has been drawn as a juror. And the privilege or right thus secured to the prisoner.was as completely presented to and enjoyed by him as it could have been by continuing it until the juror wag sworn. The opportunity of challenging the juror peremptorily was clearly and distinctly *240 given to him, and he as clearly and distinctly declined to avail himself of it.
Under the statute, this right is secured to the accused. He is not obliged to exercise it, or to avail himself of it Whether he will do so or not is exclusively within his own election. It is in no manner essential to the validity of the trial that he should make use df it; and if he omits to do so he has no right to complain of the omission. It .is obviously and necessarily, therefore, a right or privilege which he may waive, and it is solely for him to decide whether he will waive or assert it. In this respect he. is subject to the dictation or control of no person whatsoever. When the opportunity was extended to him for exercising this power, he not only decided not to make use of it, but announced that determination as clearly, and plainly as words could be made to express it.
This right of peremptory challenge is of an entirely different nature from those reserved to the criminal which it has been held he could not waive. Among these is the positive requirement that persons accused of crimes shall be tried by jury, and that the jury shall consist of the first twelve jurors who shall appear and be approved as indifferent, both of which were secured to the prisoner in this case. Under the great charter of England, a peer was required to be tried by peers of the realm. In these cases the charter in the one case and the constitution and statute relating to the others, are imperative, and no legal valid trial could be had without conforming to their requirements. (Cancemi v. The People, 18 N. Y., 128.) The party charged with the offense could legally be tried in no other manner than that specially declared and provided, and consequently consent on his part to a different mode of trial would be altogether nugatory. The end would be the same as though he persistently objected to the unauthorized proceeding. But there is no statute imperatively requiring that the prisoner shall perempto *241 rily challenge one or more of the persons drawn as jurors to try him. The privilege is conferred upon him to use it or not, as he may deem proper. And his election upon that subject is not only conclusive upon him, but it is likewise so upon every other person. And being so, he may use or surrender it as to him may at the time seem proper. A party may always waive a benefit secured to him by law, whether constitutional or statutory, unless the observance of it is imperatively required. He may waive a constitutional provision, or an enactment of the Legislature intended for his benefit, subject to the restriction just mentioned. (Lee v. Tillotson, 24 Wend., 337; People v. Murray, 5 Hill, 468; Sedgwick on Const, and Stat. Law, 111, 421; Buel v. Trustees of Lockport, 3 Com., 197, 200.) He may also waive his right to an examination when arrested upon a criminal charge. (Champlain v. The People, 2 Comst., 82, 84.) And when arraigned upon an indictment he may even waive his right to a trial by pleading guilty, and that too without reference to the character or consequences of the offense he maybe charged with. On this general subject Cowen, Justice, in delivering. the opinion of the court in The People v. Rathbun (21 Wend., 542), said: “Quilibet potest renunciare juri pro se introducto, is a maxim of universal application. The prisoner may even waive his right to a trial at the hands of a jury on the merits by pleading guilty. Having the power, no one will pretend that he cannot consent to anything less. He may waive any matter of form or substance, excepting only what may relate to the jurisdiction of the court.” (See also Broom’s Legal Maxims, 444.) And having the power, no more unequivocal indication could be given of the intention to renounce the privilege conferred upon him than that which the evidence in this case presented. If the party arraigned upon an indictment should declare that he did not demand a trial, or, which is the same thing, pleaded guilty, he would have *242 no right afterwards to' demand a trial or plead not guilty. His right would be gone with the announcement of his determination, and whatever change might follow a change in the prisoner’s purposes, would depend upon the discretion of the court. So it was in this case. When the prisoner’s counsel declared that they would not peremptorily challenge the juror, they disclosed their purpose to be to waive or surrender that privilege, and practically consent that the juror should take his seat. And no case can be found in the books, unless it may be that of Hendricks v. Commonwealth (5 Leigh, 707), in which a different conclusion is maintained. In the case of Beauchamp v. The State (6 Blackford, 308), four jurors were called; three yere accepted, and one was challenged by the prisoner, and another was called and accepted by him, and thereupon one of the first three was peremptorily challenged by the State, and the challenge was allowed, which was held not to be error. The cases of Manly v. The State (7 Blackford, 593), and Wyatt v. Noble (8 Id., 507), were decided on that authority. It does not appear what the question was, or how it was presented in either of the last two cases. The simple point decided is all that the reports contain, and that is that the right of the party to challenge a juror peremptorily continues until the jurors are sworn, which of course states the general rule of law on the subject, without the important element existing in this case showing its abridgment. In the case of Jackson v. Piford (8 Blackford, 194), the challenge was allowed after the party declared himself satisfied with the jury. There was no impropriety in that because its allowance rested in the discretion of the court, and its exercise for that reason could not be alleged as a ground of error. In the present case, if the same discretion had been used in the same way, the prosecution could not have complained of it. Being discretionary, the manner in which the power was used, whether to permit or exclude the challenge, *243 would not be subject to the review of. an appellate tribunal. In the case of Jones v. Van Zandt (2 McLean’s Rep., 612), a peremptory challenge was allowed under very much the same circumstances, not as a matter of right, but because the court thought it not unreasonable to allow the challenge to be made. In the case of Hooker v. The State (4 Ohio, 348), the court required the peremptory challenges to be exhausted before challenges were made for cause. This was in conformity with the practice now well settled by the Supreme Court of Massachusetts. (Com. v. Rogers, 7 Met., 500; Com. v. Webster, 1 Cush., 295.) But the Supreme Court in Ohio refused to sanction that practice, and that is all that was really presented for decision or decided in that case. The question now before this court was in no way presented by it. The case of Schumaker v. State (5 Wisconsin, 324), has still less bearing upon it. The court at the trial held that the prisoner must challenge four jurors peremptorily at one time, or be considered as waiving four such challenges. And this was held to be error. In the case of The State v. Cameron (2 Chandler’s Rep., 172), the same court distinctly decided where the jurors had been accepted, but not sworn, that it was then too late to make a peremptory challenge; and that, too, when there had been no express refusal to rnakfe the challenge at any time. In the case of Patton v. Ash (2 Sergt. & Rawle, 123), the party expressly declined to make a peremptory challenge when his turn to do so was presented, and it was held that he had waived it, even though the jurors had not been sworn. Ttlgh-MiUsr, C. J., said: “ If the plaintiff waived the second challenge when it came to his turn to make it, he would not be permitted to resume it again. It would give him an unfair advantage.” In the case of The State v. Potter (18 Conn., 166), this precise question was presented, and the court held that the party could not make a peremptory challenge after he had declined to do so when the oppor *244 tunity was directly presented to him for that purpose at the trial. These are all the authorities which have been found bearing upon the consideration of the present question, and they certainly appear to preponderate very decidedly in favor of the disposition made of it at the trial.' And in that respect they coincide with the good sense and reason of the law upon this subject, and at the same time secure to the accused the substantial enjoyment of the privilege designed to be conferred upon him. The time when the privilege may be exercised, if it be left free and unembarrassed, cannot be important. The paramount consideration of the law is that it shall be available to the accused as a final means of setting aside the juror, after exercising or waiving his challenges of a different description. Wharton says that “ it is clear that the right ceases when the panel .is complete and accepted.” Though it would otherwise continue until the jurors are sworn. (Wharton’s Crim. Law, §§ 2,972, 3,026.)
The juror, John Eawle, upon his examination stated that he had formed an opinion, and he was excused on that account. The defendant’s counsel then offered to prove that the opinion formed was adverse to the prisoner, which was ruled out and the counsel excepted. That the proof offered would not render the juror competent was expressly decided by this court in the case of The People v. Floyd, in which Justice Davis delivered the opinion. Nothing can be added to what was said by him on that occasion on this point.
Upon the trial of the cause the witness, N. B. Sherwood,, was asked the general question whether, in his opinion, the defendant had a sound mind at the time of the occurrence on which the indictment was predicated. This was objected to as incompetent by the witness, and the objection was sustained. This witness was an acquaintance of the prisoner, and had previously stated the impressions produced on his mind by his conduct and demeanor. He *245 was not shown to be an expert in any sense of that term; ancl even if the question was right in point of form, it is well settled that such a witness is not competent to give a general opinion upon the question of sanity. While he may state the convictions created in his mind by the acts and conversations of the person whose mental condition may be in question, he cannot be permitted to answer the general question, whether his mind was sound or unsound. (Dewitt v. Bailey, 5 Seld., 371; 17 N. Y, 340, 347-8; Barb. Crim. Law, 399; The People v. Lake, 2 Kernan, 358; 1 Greenleaf on Evidence, § 440; The People v. Eastwood, 4 Kernan, 562.) Within the same authorities, there was no impropriety in permitting the witness, Henry Fenis, to answer whether the defendant talked intelligently. What was asked for was the impression or conviction produced on his mind by what he had observed, and not a general opinion upon an abstract question. The witness, Harrington, gave the same general description of evidence as the result of his observations of the defendant. It was only when it was proposed to go beyond that, and inquire generally as to the opinion of the witness concerning the prisoner’s mental condition, that tüe question was disallowed as improper.
The prisoner’s counsel asked the court to instruct the jury that there was no evidence from which they could find that the injuries were inflicted by him upon his child in the heat of passion. The court declined to charge in that manner, and the prisoner excepted. He also excepted to the charge that the jury were at liberty to disbelieve the- statement of the prisoner that he was not angry or in a passion at the time he punished the child; and determine from the appearance of the child, and the length of time the prisoner was punishing it, and such other circumstances as they found proved in the case, whether the injuries were inflicted in the heat of passion. The charge as given in this respect was within the very well settled *246 rule of evidence relating to confessions proved upon the the trial, and is fully sanctioned by the decision of this court pronounced by Judge Bronson, in the case of Kelsey v. Bush (2 Hill, 440). The rule as he stated it to be is that, if that part of the confession which discharges the party is in itself highly improbable, or if there be evidence alliunde, though but slight, tending to discredit it, the jury may believe one part of the confession and reject the other. Greenleaf says: “ It is-not to be supposed that all the parts of a confession are entitled to equal credit.
■ The jury may believe that part which charges a prisoner and reject that which is in his favor, if they see sufficient grounds for so doing.” (1 Greenleaf on Evid., § 218.) The evidence was such that the jury were at liberty to conclude from it that the prisoner had beaten and talked to the child alternately for two hours and a half, the beating being with a piece of shingle near two inches in width, with so much violence that at the end of that time it expired. The condition of the body indicated the beating it had received to be the cause of its death; and if they believed that to be true, no violence would be done to the circumstances if they were made to support the conclusion that the injuries inflicted upon the body of the child were inflicted in the heat of passion. The question might well suggest itself whether a father could thus beat his child of three years and a half old without being in the heat of passion, and that question was solely one for the jury to answer. The evidence was certainly sufficient to justify them in the answer they gave to it.
The part of the charge relating to manslaughter in the third degree cannot be of the least importance, since the prisoner was not convicted under it, and it was in no manner connected with the offense of which he was found guilty.
The prisoner’s counsel requested the court to charge the jury that if the prisoner commenced the punishment pro *247 perly and in a lawful manner, and had no reason to suppose, and did not suppose, he was endangering the life of the child, that he was entitled to an acquittal. The court declined to charge in that manner, and the prisoner’s counsel excepted. The court charged, in this connection, that even though the prisoner did not have reason to suppose that he endangered the life of the child, yet if the punishment was immoderate or excessive, and such excess was cruel and unusual, and produced the death of the child, and was inflicted in the heat of passion, the defendant would be guilty of manslaughter in the second degree. To this the prisoner’s counsel also excepted. Whether the punishment was commenced properly or in a lawful manner or not, was entirely immaterial under the statute. It is of no consequence whatever how it may have been commenced, or what the prisoner’s supposition might have been in relation to it, if the punishment was afterwards applied in a cruel or unusual manner, and in the heat of passion, and that produced the death of the child, the offense was committed within the very terms of the statute. The statute provides that “the killing of a human being, without a design to effect death, in a heat of passion, but in a cruel or unusual manner, unless it be committed under such circumstances as to constitute excusable or justifiable homicide, shall be deemed manslaughter in the second degree.” (3 R. S. 5th ed., 940, § 10.) The act could have been excusable homicide only in case the death of the child had been produced by accident and misfortune in its lawful correction (Id., 939, § 4), which could not be true where the punishment was excessive or immoderate. In order to constitute the offense of manslaughter in the second degree, in a case like the one under consideration, all that the statute requires is that the punishment should be of a cruel and unusual character, which it could not be unless it was immoderate'or excessive, that it should be applied in the heat of passion, and result in the death of *248 the person receiving it. lío other elements whatever are included in the statutory definition of the crime, and it would therefore have been error for the court to have charged as requested. The. conviction of the defendant should be affirmed.
Judgment reversed and new trial ordered.