## WILLIAMS *v.* THE STATE, 32 Miss. Rep., 389.

### HOMICIDE.

Jurors in capital cases should always be entirely impartial between the state and the accused; and it is the duty of the court to see that the jury is composed of men above all exceptions in this respect.

A large class of the community doubt the expediency of capital punishment, others have a strong repugnance to it. And some few individuals sincerely entertain conscientious scruples against it. It is the latter class who are disqualified from serving as jurors in capital cases, "provided only, however, that their scruples are such as would prevent them from finding a verdict according to the evidence." The disqualification of this class is too firmly settled to admit of controversy.

The jury are not to decide questions of law in criminal, any more than in civil cases. In this country, as well as in England, the courts are the judges of the law as much in criminal as in civil cases. The court here adopts the language of Judge Story,[1] in the case of U. S. v. Battisto, 2 Sumner, 243. But the court is authorized to instruct the jury only in writing, at the request of the parties, and upon contested questions of law applicable to the issue.

---

[1] STORY, J., in summing up, to the jury said: "Before I proceed to the merits of this case, I wish to say a few words upon a point suggested by the argument of the learned counsel for the prisoner, upon which I have had a decided opinion during my whole professional life. It is, that in criminal cases, and especially in capital cases, the jury are judges of the law as well as of the fact. My opinion is that the jury are no more judges of the law in a capital or other criminal case, upon the plea of not guilty, than they are in every civil case tried upon the general issue. In such of these cases their verdict when general, is necessarily when compounded of law and of fact; and includes both. In each they must necessarily determine the law, as well as the fact. In each they have the physical power to disregard the law, as laid down to them by the court. But I deny, that in any case, civil or criminal, they have the moral right to decide the law, according to their own notions or pleasure. On the contrary, I hold it to be the most sacred constitutional right of every party accused of a crime, that the jury should respond as to the facts, and the court as to the law. It is the duty of the court to instruct the jury as to the law; and it is the duty of the jury to follow the law as it is laid down by the court," etc.

In error from the circuit court of Marshall County. SCRUGGS, J.

*T. W. Harris*, for plaintiff in error.

*D. C. Glenn*, attorney general.

SMITH, C. J., delivered the opinion of the court:

The plaintiff in error was tried in the circuit court of Marshall county upon an indictment for murder, and convicted of manslaughter in the second degree. A motion was made in arrest of judgment and for a new trial, which being overruled, the prisoner excepted, and prosecutes this writ of error to reverse the judgment entered against him.

Several grounds are taken in this court upon which it is insisted that the judgment should be reversed and a *venire de novo* awarded. In proceeding to notice them, we shall pursue the order in which they are presented in the record.

The first exception relates to the rejection of certain persons as jurors. Henderson Kirk having been examined by the court and pronounced competent, was put upon the state. Whereupon the district attorney asked him, " if he was opposed to capital punishment." The question was objected to by the prisoner's counsel; but the objection was overruled. Kirk responded to the question in the affirmative, and stated, further, " that he had conscientious scruples upon the subject of capital punishment; that they would bias his judgment, and he would prefer being excused." The state then challenged him for cause, and the court sustained the challenge.

John B. Norfleet was also, after having been examined by the court and pronounced competent as a juror, turned over to the representative of the state, who propounded the same question to him. The question was likewise objected to by the prisoner, and his objection overruled. Norfleet thereupon answered, that " he did have conscientious scruples on the subject of capital punishment, and that it would be against his conscience to render a verdict by which a party would be subjected to the punishment of death; but that he thought he could do justice as between the state and accused." Whereupon he was challenged for cause by the state, and the challenge was sustained by the court.

We perceive no objection to the course of examination pur-

sued.   Although the judge expressed himself satisfied of the competency of the persons produced as jurors, they were neither tendered to, nor accepted by the prisoner, but were turned over to the district attorney for the purpose, we presume, of further examination.   In all cases of this character it is the duty of the court to see that an impartial jury is empanelled, and that it is composed of men above all exception.   9 S. & M., 119.   And although objections to jurors on the ground of conscientious scruples, usually assume the shape of a challenge on the part of the prosecution, the court may set aside the juror of his own motion; and in the United States v. Connell, 2 Mason, 91, this was done without even swearing or affirming the jurors.   In the People v. Damon, 13 Wend., 351, the rule is laid down, that the court may set aside incompetent jurors at any time before evidence is given.

But the objection mainly relied on, involves the question of competency.   It is insisted that in neither instance was the juror rendered incompetent by reason of the conscientious scruples declared and entertained by him.

A large class of the community doubt the expediency of capital punishment, others have a strong repugnance to it, while some few individuals sincerely entertain conscientious scruples against it.   It is this latter class which have been held disqualified from serving as jurors, in cases in which a verdict of guilty would be followed by capital punishment, "providing only, however, that their scruples are such as would prevent them from finding a true verdict according to the evidence."   And it is now too firmly settled to admit of controversy that conscientious scruples entertained by a person which would prevent him from *assenting*, or agreeing to a verdict, which would subject the accused to capital punishment, although justified by the evidence, disqualify him as a juror.   Lewis v. State, 9 S. & M., 115; People v. Damon, 13 Wend., 351; Com. v. Lesher, 17 Serg. & Rawle, 155; Jones v. State, 2 Black., 475; Martin v. State, 16 Ohio, 364; Williams v. State, 3 Kelly, 453.

The reason upon which this rule is founded is, that such scruples entertained by a juror, incapacitate him as such, in the performance of his part in the due administration of the law.

He must violate his conscience or disregard the obligations which the laws of his country attach to the relation in which he stands. There is no third course by which he can escape from these alternatives. If placed on the jury he is compelled either to violate his oath or his conscience, and a man who would do either, is unfit to serve as a juror.

The conscientious scruples against capital punishment, entertained by Kirk, would, as he stated under oath, bias his judgment; the question then is, was Kirk rendered incompetent as a juror by reason of those scruples?

If sworn as a juror, the question which he would have to decide, was, whether the evidence adduced on the trial proved beyond a reasonable doubt the facts alleged in the indictment, constituting the offense. That was purely a question of fact to be determined by the evidence. And, it is said, as the subject of inquiry for the jury was entirely distinct from the question whether the state could rightfully impose the penalty of death as a punishment for crime, and from the question, whether the juror would, in any case, without a violation of his religious obligations, consent to a verdict which would be followed by capital punishment, any scruples which the juror might entertain on these subjects, as they could not influence his judgment in weighing the evidence, ought not to exclude him, unless his scruples were of such a character as to preclude him from convicting the accused of a capital offense; that guilt is conclusion of law from facts, judicially ascertained, and in the ascertainment of which the witness who testifies, and the juror who founds his verdict on his testimony, are equal actors; but as it is neither the juror nor the witness, but the law that dooms the culprit to death, no better reason can be offered for excluding the juror than excusing the witness from testifying, on the grounds of conscientious scruples against capital punishment.

These arguments are more specious than solid. They do not meet the question. The question is not one of exemption from the discharge of a public duty upon the ground of religious belief or conscientious scruples; it is one which respects the fitness and competency of a person called to act in the capacity of a juror. Conceding for the purpose of argument, that Kirk's

scruples would not influence his judgment in weighing the testimony; they were nevertheless, as he admitted, sufficiently strong to bias his judgment.

If, then, according to the argument, his scruples would have no influence upon his mind in the examination of the evidence and the decision of the question of fact submitted to him, on what subject would his scruples operate, and in what way would they bias his judgment, as he admitted they would. Assuredly if they operated at all in controlling his action, it would be by preventing him from consenting to a verdict, however conclusive the evidence might be of the guilt of the accused, which would subject him to the death penalty. It is true, Kirk did not state that his scruples would preclude him from rendering a verdict in any case of a capital felony. But under the view in which the question is argued, it is clear, if his scruples touch him at all, they must of necessity produce that result. At all events, he could not convict the prisoner of murder without violating his conscience. He therefore did not stand indifferent; he was not in a condition in which he could impartially hear and examine, and acquit the innocent and convict the guilty. "He that is of a jury," (says Coke,) "must be *liber homo*; that is, not only a free man and not bond, but one also that hath such freedom of mind, that he stands indifferent as he stands unsworn." We therefore think that he was properly excluded.

In coming to this conclusion, we have gone a step farther than the courts of this country have gone. The rule on this subject, heretofore generally recognized, is, that conscientious or religious scruples in regard to capital punishment, to disqualify from serving on juries, must be such as would prevent the person entertaining them from finding a true verdict according to the evidence, and compel him to disregard the obligations of his oath as a juror. 2 G. & W. on New Trials, 258. We are satisfied, however, that the rule we have here applied, is founded on sound principles, and necessary to the attainment of the true objects for which trials by jury were instituted.

The action of the court in reference to Norfleet, the second juror called and examined, presents a different question, and one which is not entirely free from doubt. The rule, judicially

recognized, applying to his case is, that opposition to capital punishment which would not influence the mind of the juror, but would leave him free to find a true verdict according to the evidence, is no disqualification. This was held in Commonwealth v. Webster, 5 Cush., 295. This and the case before us are not precisely alike. Here the objections of the juror to capital punishment assume the form of conscientious scruples, and hence the reasons for excluding him are the stronger. But he stated that " he thought he could do justice as between the state and the defendant." It is not so clearly perceived how a juror who entertains conscientious scruples against capital punishment, can perform his part in the due administration of the law, when acting as a juror on the trial of a capital felony. If, however, we regard the obligation imposed by the oath of a juror paramount to any supposed moral duty, arising from a belief that the punishment of death is inexpedient and sinful, and he is thus enabled impartially to weigh the evidence, and to find a verdict accordingly, it will not be contended that he is incompetent as a juror. Upon this supposition, he would stand " indifferent as he is unsworn." And we suppose the answers of the juror are the only means by which his impartiality can be determined. If one called as a juror state that he has formed or expressed an opinion in regard to the guilt or innocence of the party charged, from the statements of persons which he believed, such person would not be a competent juror, although he might also state that he thought he could, with perfect impartiality, examine the case and render a true verdict according to the evidence. This is what one might say, and what every honest man should endeavor to do. But he would be incompetent, because he would not stand indifferent between the parties. Having admitted the existence of an opinion, we know that evidence would be required to remove or change it. We could thus reason from an admitted fact, and found a conclusion from the necessary effect of such admitted fact, which would contradict the opinion expressed by the juror as to his impartiality and freedom from bias. But as it is impossible, in any case, to ascertain what effect would be produced, or whether any influence whatever would be exerted upon the mind of the juror, in

deciding upon the weight of the evidence, by his scruples in reference to capital punishment, we are compelled to take the statement of the juror as conclusive. Whether such scruples would or would not control or bias his judgment, must, of necessity, be left to him to decide. If, upon an examination of his own heart, he is satisfied that he can fairly and impartially weigh the testimony in the cause, and without bias render a true verdict, we do not think he ought to be excluded. In our opinion, therefore, the court erred in setting aside this juror.

Charges were granted at the instances of the district attorney, and excepted to by the prisoner. Numerous instructions were requested by the prisoner, all of which except one, which we shall notice hereafter, were given. Several of these were subsequently modified or explained by the court. As we must reverse for the error above pointed out, we deem it unnecessary to notice the objections raised in the argument in regard either to the charges given for the prosecution or to the modifications made in those granted for the defense.

The instruction refused by the court, and above referred to, is as follows : " The jury are not only the judges of the facts in the case, but they are also the judges of the law."

In many of the colonies, immediately preceding the revolution, the arbitrary temper and unauthorized acts of the judges, holding office directly from the crown, made the independence of the jury, in law as well as fact, a matter of great popular importance. From this cause, the doctrine embodied in the charge under consideration, grew into recognition, and for some time, after the adoption of the federal constitution, it was generally received. It is unnecessary to notice the course of judicial decisions on this subject. It is scarcely necessary to state, that in no great while after Fries' Case, in which the doctrine was fully recognized by the court, who charged that " the jury are to decide on the present and in all criminal cases, both the law and the facts, on their consideration of the whole case," the courts one after another abandoned the doctrine. In England, it has always been held that the court were as much the judges of the law in criminal as in civil cases. And this doctrine is now undoubtedly sustained by the great weight of authority.

Am. Cr. Law, 896. Our own opinion accords with that of Judge Story, in the case of The United States v. Battisto, 2 Sumner, 243, and we adopt his language in that case as fully expressing the views of this court. We hold, therefore, that there was no error in the refusal of the court to give the instruction.

After the court, at the request of the district attorney and the prisoner, had charged the jury, it proceeded, of his own motion, to charge them generally upon the law of homicide. This proceeding of the court was excepted to, and the charge, which was in writing, placed upon the record. It is now insisted that this proceeding was in violation of the statute, and constitutes a good ground for reversing the judgment.

As an exposition of the law, in our opinion, the charge was unexceptionable. It was a succinct, extremely intelligible, and very accurate explanation of the principles of the criminal law applicable to the case before the jury. But, in our opinion, it was a proceeding unauthorized, and in plain violation of the statute restricting the authority of the circuit judges to charge the jury, in criminal trials, except under certain specified conditions. Hutch. Dig., 888, art. 9, § 14.

The object and policy of the act are declared in the preamble. They are to secure juries, in the discharge of their appropriate functions, from any improper influence on the part of the court, and thereby the better to preserve the sanctity of the trial by jury. And to these ends the legislature, according to the construction of the statute, which, we think, the proper one, has declared that any judge, before whom any issue of the fact is tried, shall charge the jury only upon contested questions of law applicable to the issue, and at the request of one of the parties, or their counsel, distinctly specifying, in writing, the point of law in regard to which the instruction is asked.

We are bound to believe that no officer of the state would designedly transcend the authority vested in him by law; and in this particular case, that the learned judge proceeded upon reasons which were satisfactory to himself. But upon this interpretation of the statute, it is impossible to justify the course pursued by the court.

Judgment reversed.

HANDY, J., delivered the following dissenting opinion :

I cannot agree to the opinion of a majority of the court upon the point of the competency of the juror Norfleet.

That juror, upon examination, stated that he had conscientious scruples upon the subject of capital punishment, and *that it would be against his conscience to render a verdict by which a party would suffer death ; but that he thought he could do justice between the state and the defendant.*" Upon objection on this ground by the state, he was held incompetent, and discharged.

It is true, that under the rule held in most of the states of this Union upon the subject of the competency of jurors, this juror would have been competent. But a different and much more stringent rule has been held by this court in excluding jurors in cases of homicide, who were not free from all exception, than has been adopted by those courts. The courts which hold the rule which renders this juror competent, also hold a juror to be competent who has formed or expressed an opinion as to the guilt or innocence of the accused, but who states that his mind would be as free to decide upon the evidence that might be adduced before the jury as if he had never heard anything of the case. But this question has often been presented to the court in behalf of prisoners, and the rule has always been held, and is now considered as entirely settled, that such juror is incompetent, because the juror must be above all exception. Nelms v. The State, 13 S. & M., 500 ; Cotton v. The State, 31 Miss. R. 504. In this last case, the juror stated, on his examination, that he had formed an opinion of the case *upon rumor*, and *that he felt as free to act in the matter as if he had heard nothing about the case.* Yet this court reversed the judgment below, and held that the juror was not competent, because he was not above all exception—in which opinion I concurred, *solely on the ground that it was a settled rule* under previous decisions of this court. I am unable to comprehend how it is that, upon any just principle, the rule thus established does not apply to the present case. That rule is, that the juror must be entirely free from all bias or preconceived opinion from any cause, and " *above all exception.*" It must apply with as much

force to any abstract principle involved in his action as a juror, and which would warp his judgment and incline him to resolve everything in the evidence in a way that would relieve him from the necessity of doing violence to his conscience, as to the question whether the facts did or did not establish the guilt of the accused. If there is any difference in principle between the two cases, the juror who entertains conscientious scruples which would necessarily incline him to favor the accused, is clearly the more obnoxious to the objection of not being " above all exception ;" for, in the other case, the previously formed opinion may be controlled by the evidence. It is an opinion or impression formed upon a supposed state of facts. That is the very subject of trial, and to which the evidence and the whole investigation are directed; and there is every opportunity to remove his first impressions, and it is to be presumed that he will render a true verdict upon the evidence and law of the case, by which his action would be wholly controlled. But in the case of a juror who would be acting against his conscience in finding a verdict which would inflict capital punishment, there would necessarily be a bias proceeding from a principle of moral duty which could never be removed upon the trial, because its correctness and moral force could never be the subject of proof and judicial investigation in the trial of the cause. The opinion, therefore, must have its full sway upon the juror's judgment, without any opportunity of correcting or removing it ; and, hence, it appears to me to be impossible to hold that such juror could be wholly free from bias and above all exception, without reversing the rule that is considered as settled in this court.

Suppose the juror in this case had stated, on his examination, that he could not conscientiously render a verdict of acquittal of any one who had taken the life of his fellow man, but that in the case in which he was called, "he thought he could do justice between the state and the defendant;" and that juror had been received upon the panel and a verdict for murder had been found in the case. Could this court have hesitated a moment in reversing the judgment? I presume not; nay, I suppose it would have been considered an outrage upon the settled law of this court; and yet I am incapable of perceiving any dis-

tinction between that case and the one under consideration. There is in each of them a bias of judgment upon an abstract principle, which must, more or less, influence the juror in considering the evidence, and incline him to find pretexts by which he can render a verdict consistently with his previous views of principle and duty; and it appears to me most obvious, that equally, in both cases, it is impossible to say that such a juror was "above all exception."

I therefore think that the ruling of the court below was most manifestly right in excluding the juror.