## ISAAC JEFFERSON VS. THE STATE.

1. CRIMINAL PRACTICE: *Jury trial. Indictment for murder.*
The indictment, its return into court with the indorsements and entries, must conform to the Code of 1871, ₴ 2794. A special venire may be waived by the parties, and, if neither party demand it under ₴ 2759 of the Code of 1871, a jury may be impaneled from the regular venire for the week.

2. SAME: *Competency of a juror. Discretion of the court.*
Where the jury were impaneled and sworn to try a case of murder, and the indictment was being read to the jury, and one of the jurors arose in his place and stated that it then occurred to him for the first time that he was a member

of the grand jury who found the bill of indictment, it was competent and within the discretion of the court to direct the juror to stand aside, and substitute another in his stead, and have the whole jury resworn.

3. SAME: *Bill of exceptions. Record.*

Where a motion is made for a new trial, and is overruled by the court, the record must show such action; otherwise, the accused cannot avail himself of exceptions taken thereto. It is not sufficient that such action of the court appears and is embodied in the bill of exceptions; it must appear in the record proper.

ERROR to the Circuit Court of *Tate* County.

Hon. E. S. FISHER, Judge.

A statement of the case necessary to a full understanding of all the points decided will be found in the opinion of the court, and also the assignments of error.

*J. A. Brown*, for plaintiff in error:

The indictment should be signed by the district attorney, and not by the grand jury. The foreman of the grand jury indorses on it, "a true bill, —— ——, foreman of the grand jury." This is the only evidence that it is a true bill. The provisions of the Code of 1857, p. 614, art. 254, are omitted in the Code of 1871. See p. 604. In this case the grand jury have not declared it "a true bill." Cody *v.* The State, 3 How., 30; Peters' case, ib., 434. The right to be tried only on an indictment *found* by the grand jury is secured by the constitution of the state, §§ 7, 31. The prisoner was not present when the motion for a new trial was overruled. Stubbs *v.* The State, 49 Miss., 724. After the trial had commenced it was error to withdraw a juror and substitute another, and go on with the trial. Stewart *v.* The State, 50 Miss., 589. The witness Candice Moseley violated the rule, and should not have testified in the case. Her testimony was clearly inadmissible, and upon it the accused was convicted. Upon her testimony the court gave instructions as to former grudges and express malice. The killing was not malicious, as the testimony shows, and at most the offense could only be manslaughter.

*G. E. Harris*, Attorney General, for the State:

The record shows a proper organization of the court and grand jury, and the finding and return of the indictment into

court.  See the record, and Code of 1871, § 2794.  Frierson *v.* The State, 3 How., 422 ; Josephine *v.* The State, 39 Miss., 631, 650.  The accused was tried by a legal jury.  No demand was made for a special venire, under Code, § 2759.  Loper *v.* The State, 3 How., 429 ; Durrah *v.* The State, 44 Miss., 789.  No challenge to the array shall be sustained except for fraud.  Code, 1871, § 743.

The witness Candice Moseley was admissible.  She was not placed under the rule, nor even subpœnaed.  It is in the discretion of the court, and was proper.  1 Greenl. on Ev. (Redf. ed.), § 432, and notes.  The 9th instruction was properly refused ; it is not sustained by the authorities.  Dyson *v.* The State, 4 Cushman, 362 ; Wesley's case, 37 Miss., 327 ; Head's case, 44 ib., 731 ; Evans' case, 44 ib., 762.  The 7th instruction for the state was properly given.  See Whart. Am. Law Hom., pp. 33, 198 ; Code, 1871, § 2628 ; Newcomb's case, 37 Miss., 383 ; Gibson's case, 9 George, 297.

TARBELL, J., delivered the opinion of the court.

The plaintiff in error was indicted, tried, and convicted of the crime of murder, and by the jury sentenced to the penitentiary for life.  Errors are assigned as follows : 1st. The record does not show an indictment found and returned into court.  2d. A trial was not had by a legal petit jury.  3d. The court erred in admitting the witness Candice Moseley to testify.  4th. In refusing to give the 9th charge asked by accused.  5th. The accused was not present when the motion for a new trial was overruled.  6th. In overruling the motion for a new trial.

Though not difficult of solution, the case is interesting.  The errors assigned will be noticed in their order.  The organization of the grand jury, the return of the bill into court, and the indictment with its indorsements, will be found in the record, pp. 4, 5, 6, 7.  These statements seem to be full, and to show a complete compliance with the Code, § 2794.

49

2. A special venire not being demanded by either party, under the Code, § 2759, the petit jury was made up from the persons for the week. No error is seen in this; but after the jury was selected, assented to by the state and by the accused, impaneled and sworn, and during the reading of the indictment, one of the jurors arose in his place and stated that it then occurred to him for the first time that he was one of the grand jurors who found the bill. Upon this statement, and without objection by either party, but with the assent of both, the juror was directed by the court to stand aside. Another juror was substituted, and the whole jury resworn, when the trial proceeded. Although the record shows this to have been done with the consent of both parties, yet the bill of exceptions also states it to have been excepted to. In fact it is recited, generally, that every action of the court was excepted to. The Code, § 2761, which requires that "all peremptory challenges by the state shall be made before the juror is presented to the prisoner," is inapplicable to the case at bar. Did the court err in directing the juror to stand aside, and in substituting another in his stead? The objection taken is general. The accused did not claim at the time a continuance of the trial, the privilege of re-challenging the other eleven jurors, or any other benefit, as the result of such change in the jury, nor did he then, nor does he now, insist or intimate that he was thus prejudiced in any way. The question is, therefore, as to the abstract right of the court to change the jury as in this particular instance. No injury or prejudice is shown or complained of. On the contrary, the presumption would be, naturally, that a grand juror who united in finding the bill would be prejudiced against the prisoner. The substitution of another in his stead may be supposed fairly to be an act favorable to the accused. However, aside from the particular facts of this case, it is well settled by the authorities that the practice involved rests in the discretion of the court. No abuse of this discretion appears. McGuire's case, 37 Miss., 369, is precisely in point, and so is

Lewis' case, 9 S. & M., 115. In The People v. Danner, 13 Wend., 354, the rule is said to be that the court may set aside incompetent jurors at any time before evidence is given. This practice is fully considered in 1 Archb. Cr. Pr., 172 (side page), *et seq.*, and notes, and also in 1 Bish. Cr. Pr., §§ 807, 808, 809, 810, and numerous cases in the notes. See, further, Fletcher v. The State, 6 Humph., 249. There was no error in this action of the court.

3. The witnesses were put under the rule. On the trial Candice Moseley, who had not been subpœnaed, and who had heard the testimony, was permitted by the court to be examined as a witness. This was in the discretion of the court. 1 Greenl. on Ev., § 432, and notes.

4. The accused asked the court to instruct the jury that if, at the time of the killing, there was a reasonable belief or impression in the mind of the accused of bodily harm at the hands of the deceased, then the accused had the right to anticipate the act of the deceased, and slay him.

This instruction asked more than is allowed by the adjudications. The danger to the slayer must be present, active, and apparently imminent, to create the reasonable belief of danger. The charge refused is not so framed. Wesley's case, 37 Miss., 327 ; Head's case, 44 ib., 731 ; Evans' case, ib., 762. The facts of this case will be referred to presently. They show that the deceased was not killed in the act of riotous demonstrations upon the house of accused, but at some undefined hour thereafter. The deceased retired down the road 150 yards from the house of accused, a bloody fight occurred in the night-time, deceased was found next morning dead in the yard of the accused. Hence the charge was correctly refused upon the facts.

5. The motion for a new trial. As given on page eleven of the record, the action of the court thereon is stated only in the concluding portion of the bill of exceptions, in these words : " The jury having found a verdict of guilty, as stated in the record, the defendant moved the court for a new trial, which being overruled by the court, the defendant excepted and

tendered his bill of exceptions, embodying the whole testimony, the instructions, and the entire action of the court, and prayed that the same be signed and sealed," which was done so. The bill of exceptions contains the only statement of the action of the court upon the motion for a new trial, which is not the proper mode of certifying the orders and judgments of inferior courts to the appellate court. These must be contained in the record proper. N. O., J. & G. N. R. R. Co. *v.* Albritton, 38 Miss., 242; McKnight *v.* Dozier, 44 ib., 606; Jamison *v.* Moore, 45 ib., 598. Hence this court cannot review the propriety of that motion.

Nevertheless it will be observed that the trial of this case occupied two days. The verdict was rendered on the first day; on the second the accused was sentenced, and on the same day the motion for a new trial was made. The action of the court thereon is not given, except, as above stated, at the conclusion of the bill of exceptions. The clerk, however, certifies specially to the presence of the accused on both days of the trial, and generally that he was present during the whole trial. He was certainly in court on the day sentence was pronounced. The motion for a new trial was made on the same day. The decision upon that motion is wanting in the record proper. If acted upon, manifestly it was on the day it was made, when the accused is certified to have been in court. On that day he was sentenced and remanded to jail. It is not to be supposed the motion for a new trial was overruled after the sentence, and after the accused was remanded. Hence the accused has probably lost nothing by the defective manner of making up the record.

6. Notwithstanding the decision of the motion for a new trial is not contained in the record proper, it will be further observed, as to the merits, that the evidence shows that the deceased came to the house of the accused in a state of inebriation; that he assaulted the house and called to the accused to come out; but it does not appear that the deceased was slain while in the commission of these unlawful acts. On the

contrary, he retired down the road; was, at a time not fixed, pursued by accused, and a bloody contest occurred 150 yards from the house of the accused.   There was blood on a wagon there, and on the ground, and on the fence, and over the fence in a field.   The deceased was clearly slain, not in the act of assaulting the house of accused, but some time after, and after he had retired from the yard of accused down the road, where he was followed by accused.   Deceased was slain after this, though his body was found next morning in the yard of accused.

The killing was in the night; the precise time and circumstances are known only to accused and his wife, and were not disclosed on the trial.   It is manifest, however, that the deceased was not slain in the act of assaulting the house of accused, but some time after, and after he had retired down the road and been pursued by the accused.   Whether he was killed there, or whether he was killed in the scuffle down the road, and brought back by accused and his wife, is not explained.   A woman's tracks, admitted by the wife of accused to be hers, were seen down the road, but why she was down there, and what she saw or heard, are not stated.

The record in this case is quite inartificially made up, yet, when well understood, it is not believed to show error in the indictment, trial, or conviction of the plaintiff in error.   Possibly, upon a more full development of facts, the case may be one for executive clemency; but, as the evidence is presented in the record, it cannot be well shown that the jury erred in their verdict.

After a careful examination of the record and of the authorities the judgment is affirmed.