The opinion of the Court was delivered by
Fenner, J.
The defendant, convicted of murder without capital punishment, relies for reversal of the judgment on two grounds :
1. That after the jurors had been called to the book, and had been duly examined by tlie District .Attorney on tbeir voir dire, and had been then tendered, to the prisoner and had been accepted by him, and had been thereupon severally duly sworn, one of said jurors notified the court, through the deputy sheriff, that he had conscientious scruples *920 against capital punishment, upon which point he had not been questioned on his voir dire. Thereupon, the Judge, over the objection of the prisoner, propounded to each of said sworn jurors the usual quesr, tion on that subject, and two of them answering that they had such scruples, he (the Judge) challenged them for cause, and discharged them as incompetent to serve in such a cause, to which ruling and action of the court, the prisoner took a regular bill of exceptions.
We are not disposed to favor objections of this character, the purpose of which is not to secure, but to prevent trial before a fair and competent jury, which is all that any prisoner should have the right to claim.
It is unquestionably the general rule, and. so recognized by this Court, that the proper time for both the State and the prisoner to urge objections to a juror for cause, is before the juror is sworn, and the’ right of further question or of challenge for cause is, as a general thing, waived and lost after the swearing in of the juror. State vs. Isaac, 3 An. 259; State vs. Dubard, 2 An. 732; State vs. Kennedy, 8 Rob. 596.
Had the Judge, of his own motion, officiously interfered by further questioning the jurors as to their qualifications, after they were accepted and sworn, or had he permitted the State’s counsel to do so, and thereupon to exercise a right of challenge, we should perhaps have enforced the rule and have considered such a proceeding as an irregularity vitiating the proceeding. But all general rules have their exceptions; and when, as in this case, a juror, who has been sworn, of his own volition, informs the court that he is subject to a cause of incompetency as to which he and the two other jurors, who had been sworn with him, had not been questioned, we think it would be a mockery, of common sense to hold that the court would be bound to close its ears to the information, and to permit the trial to proceed before an incompetent jury, who could not find an unqualified verdict in favor of the State, under any circumstances, however clearly the law and the facts might sustain and require it.
, Under such circumstances, arising before the empanneling of the jury is completed, we held that the court was justified, in the exercise of its discretion, to remedy the negligence thus called to its attention, and to examine the jurors sworn, upon the matter of incompetency suggested, and to excuse those found subject to challenge for that cause.
In this we are' sustained by respectable authorities, which go even further than wo have done. People vs. Damon, 13 Wend. 351; Todel vs. Com. 11 Leigh. 714; U. S. vs. Morris, 1 Curt. C. C. 23; 3 Wharton Cr. L. Sec. 3130, citing the following additional cases: 11 Harris; 12; 37 Miss. 369; 1 Edm. (N. Y.) Sel. cas. 36.
*921 2. The defendant excepts to the ruling of the court admitting the evidence of two police officers as to statements made by the person killed, iu the presence of the accused.
The evidence was to the following effect: After the accused was arrested on this charge, and while in custody, he was conveyed to the bedside of John Driscoll, the man killed, who was then lying wounded in the Charity Hospital. A brother of the wounded man was also present, who was a corporal of police. The "wounded man said to the prisoner, “ Myles, you hit me, and shot me for nothing, own up..” Whereupon, Corporal Driscoll immediately said to the prisoner, “ be quiet, be still.” The witnesses said that they stayed in the room only from two to five minutes; that “ the prisoner was not told that he had a right to speak, and did not speak a word while he was in the room.”
It is not pretended that the declarations of the wounded man were made under a sense of impending dissolution. They were admitted solely on the ground that they were made in the presence of the accused, and to establish his implied admission of the truth thereof, because of his silence and failure to deny.
Implied admissions from the tacit acquiescence of the defendant in the statements of others made in his presence, only residt when the circumstances are such as afford him an opportunity to act or speak, and would naturally call for some action or reply from a person similarly situated. Mere silence, while a party is held in custody under a criminal charge, affords no inference whatever of acquiescence in statements of others made in liis presence. He has the undoubted right to keep silence as to the crime with which he is charged, and is not called upon to reply to or contradict such statements. Under such circumstance’s, it is held that the statements so made are not admissible against the prisoner, because they do not even tend to support the hypothesis of acquiescence. Com. vs. McDermott, 123 Mass. 440; Com. vs. Kinney, 12 Met. 235; Com. vs. Walker, 13 Allen, 570 ; Bob vs. State, 32 Ala. 560; Wharton Cr. L. Sec. 696.
The instant case, where it appears that the accused was not only in custody, but was actually warned by a police officer to keep silence, can leave no possible doubt that the evidence was absolutely inadmissible. The record shows that it was considered and weighed by the jury, and no doubt influenced their verdict. After they had been out about nine hours, they returned into court and asked whether the statements referred were admissible against the prisoner, and the court instructed them that they “ were admissible, and that the jury must consider it as they would any other fact, that is, the fact that John Driscoll had said so.” And the court refused to give an instruction asked by prisoner’s counsel, that, “ as a matter of law, such *922 evidence was entitled to very little weight,” but charged that “it was admissible evidence, and that the jury were the sole judges of the credibility of witnesses, and of the weight of evidence and the importance to be attached to it, the same as any other fact.”
We are constrained to conclude that this evidence, thus improperly admitted, and thus shown to have been considered and weighed by the jury, vitiates the trial and conviction.
It is, therefore, ordered, adjudged and decreed, that the judgment and sentence appealed from be annulled, avoided and reversed, and that this case be remanded to the lower court, to be there proceeded with according to law.