Mr. Chief Justice Sharkey
delivered the opinion of the court.
The prisoner was indicted and found guilty of the murder of Jesse Price. He brings up his case on eight bills of exceptions, seven of which were taken on points ruled during the progress of the trial, and the last to the decision of the court in overruling a motion for a new trial, in which the testimony is .set out, and seven reasons assigned in support of the motion.
The several points raised were thoroughly investigated by counsel, and the arguments on both sides were so lucid and forcible, that the labor of deciding is rendered comparatively light.
The first exception was taken to a refusal to sustain a challenge for cause to a juror. When called to answer questions, he stated that he had formed and expressed an opinion from what he heard one Mansfield say some of the witnesses had told him, though the juror had not heard any of the witnesses say any thing on the subject; that his opinions were not such as would influence his verdict, but he would be governed by the evidence.
This point is not, certainly, free from difficulty. The question is one of very frequent occurrence, and the decisions are numerous, though not entirely consistent. It is a question on which it seems difficult to lay down a definite and precise rule, which can be applied as a test in all cases. The great principle is, that every man who is accused, has a right to demand a trial by an impartial jury of his country; a jury whose minds are free from prejudice and from bias. Cases may arise in which it is next to impossible to procure a jury of this description, but even in such cases, the nearer we can approach to the *504 principle, the better. It seems to be generally conceded, that an opinion formed and expressed on common rumor, will not disqualify a juror. Strictly speaking, this is a departure from the true principle, .but it is a departure which may be rendered necessary in certain cases. It should be avoided, however, if possible. The mind which has received impressions from any source, cannot be said to be entirely free and impartial, since the false impression must be removed, before the true one can be made. It may often happen that a crime may be of such a character as to become a matter of general notoriety throughout a whole county. In such cases, it may be absolutely necessary to take jurors who have formed an opinion on mere rumor. But if an opinion be formed and expressed on information derived from a reliable source, the juror is certainly objectionable. An opinion from having heard the evidence, or from having conversed with the witnesses, is of that character. And an opinion formed on the information of one who heard the witnesses testify, or speak of the subject, may be equally a ground of objection, if the juror had confidence in the statement he received. An opinion so formed is not based on common rumor. In Vermilyea’s Case, (6 Cow. 562,) Judge Woodworth said it was good cause of challenge, that a juror had formed and expressed an opinion from a knowledge of the facts. The juror had heard the testimony on a former trial, and was held incompetent. And in the same case, reported in 7 Cow. 108, it was said that the mind of the juror should be in a state of neutrality as to the person and the matter to be tried. In the trial of Aaron Burr, Chief Justice Marshall said it was one of the clearest principles of natural justice, that a juryman should come to the trial of a man for life with a perfect freedom from previous impressions; and he accordingly held that jurors who had formed opinions from newspaper publications, and common rumor, were incompetent. On this ground many of the jurors were set aside, and many of them had formed opinions only from current rumor. 1 Burr’s Trial, 370. In Mather's Case, (4 Wend. 229,) a juror was set aside who had formed and expressed an opinion from newspaper publications, and from common rumor, although he declared that he was pre *505 pared to weigh the evidence and decide accordingly. In this case all the authorities are reviewed, and the rule settled, on what was regarded as the weight of authority. In McGowan v. The State, 9 Yerg. 184, the court laid down this rule, that if the juror has heard the circumstances of the case, and believing ■the statements to be true, has formed, or formed and expressed an opinion, he is incompetent. In that instance the juror had formed his opinion, not, as it was said, upon rumor merely, but from a detail of circumstances by persons in whom he con•fided. This question was very fully considered at. the present term in Sam v. The State, when jurors were held incompetent who had formed decided opinions, one from common rumor, and the other from having heard the case argued by counsel. In the case of Johnson v. The State, Walker, R. 392, it was decided that an opinion formed on common report did not disqualify the juror, though the court evidently regarded the point as worthy of great consideration, and leaves the inference that an opinion formed otherwise than on common report would be sufficient cause of challenge. On these authorities, and in view of the principle above noticed, we do not feel prepared to approve the decision of the court in holding that the juror was competent.
The second bill of exception raises this question: Was it competent to discredit a witness by introducing his statement made on the trial of a habeas corpus, as taken down by the vice-chancellor, before whom the trial was had? The statute does not make it the duty of the judge, on such a trial, to take down the evidence unless one of the parties desire it, and then he is only required to take down the material facts.. Hutch, Code, 1001. We do not think an examination taken down under this statute can be read for such a purpose, unless it be read over to, and signed or approved by, the witness. 1 Phil. 293.
The third bill of exceptions relates to the declarations of de- ? ceased, madein extremis. They were made under all due solemnity. The deceased declared that he knew he could live only a few hours at most, perhaps not more than an hour. The de *506 clarations were made to Ostun, who asked the deceased who shot him. Deceased replied “ that Nelms shot him; ” when some one standing by asked if it was Samuel H. Nelms, to which deceased replied “ yes.” The question was repeated, and deceased indicated assent by a forward inclination of the head. The witness, Ostun, was then asked, “If deceased did not so express himself as to convey the idea that it was a mere opinion, and not a thing within the actual knowledge of the deceased I ” and he was asked also, “ What Jesse Price had said to him before on the subject I” To these questions the district attorney objected, and the objections were sustained. The question is, Should the court have permitted the witness to answer these questions 1
Evidence of this description is classed under the head of hearsay evidencé, though perhaps it stands somewhat on a different footing. The awful situation of the party in prospect of immediate dissolution, is supposed to be as powerful on the conscience as the obligation of an oath. Such evidence is only admissible under a rule of necessity, and constitutes the only case in which evidence is admissible against the accused, without an opportunity of cross-examination. The leading rules in regard to the admissibility of such evidence, are laid down in Note 453 to Phillips’ Evidence, and in 2 Starlde’s Evidence, 366, 367. It is said the court must try the competency of the deceased, and the jury his credibility. Various questions may arise after the court shall have admitted the evidence. The jury may question its credibility, and consider its effect. As it is given and received under peculiar circumstances, great caution is called for in the application and use of.such evidence. To this end, it is important that all attending circumstances should be well weighed by the jury. The degree of self-possession, of observation and recollection of the deceased, should be ascertained. The state of mind arising from a sense of his critical situation, added to his suffering condition, may produce indistinctness of memory, and all these may tend to shake the confidence of the jury. It is said by an eminent writer, cited 2 Starkie, 366, that “ sometimes the declaration is of a matter of judgment, of inference, and conclusion, which however sincere may be fatally erroneous. The *507 circumstances of confusion and surprise, connected with the object of the declaration, are to be considered with the most minuteand scrupulous attention; the accordance and consistency of the facts stated with the other facts established in evidence, is to be examined with peculiar circumspection.” There is great force in these remarks. It may often happen that the party, without being perfectly certain, would ascribe the act to some suspected person, when, if the grounds of his suspicions could be known, they would be unsatisfactory. An enmity which had been but recently exhibited by threats, would be very likely to lead the mind of a wounded person to a thorough conviction that the wound had been inflicted by the person who made the threat, and he might consequently speak of it as a fact. Hence the necessity for that degree of caution which is said to be necessary in the use of such evidence. The object of the first question seems to have been to ascertain the true meaning of the deceased. Usually the opinions of a witness are not admissible, but the peculiarity of this description of evidence, the absolute necessity for confining it within proper limits, might, under certain circumstances, seem to require a departure from the strict rule. If the declarations had been equivocal or ambiguous, perhaps the impression made on the mind of the witness who heard them might have been a proper subject of inquiry. It seems to be sufficient if the substance of the declarations be'given. 11 Ohio Rep. 424. A witness who is called to prove what a deceased witness swore on a former trial, need only state the substance, and such testimony very much resembles the proof of dying declarations. To give the substance is but to give the ideas conveyed to the mind of the witness which he clothes in his own language. But there is no occasion for a resort to proof of the substance of what the dying man stated, since the witness gives the language used. The meaning of that language can be determined by the’jury. We do not therefore feel prepared to say, there was error in refusing to permit the witness to answer the first question ; but, in view of the foregoing rules, we are well satisfied that there was error in refusing to allow him to state what the deceased had said to him on the same subject at an *508 other time. If such previous conversation was had, which gave a different version of the transaction, it was important that the jury should have known what was said. To exclude it from them, was to exclude the means of trying the credibility of the evidence, a question which it was indispensably necessary for them to consider of. They could not otherwise justly weigh the declarations ; it was compelling them to take them without the •attending circumstances, and perhaps depriving them of the means of judging with that circumspection which the law requires. Important light may have been thus shut out.
We shall touch but one other question. Several of the jurors were introduced to testify in support of the motion for a new trial, who stated that two of the officers who had them in charge spoke of the enormity of the offence, by saying that it was a worse case than Dyson’s, and one of them said that public opinion was against the accused. To my mind this presents a very satisfactory and even a conclusive reason for a new trial. The' purity of trial by jury must be strictly guarded. The verdict when rendered should command entire confidence; whatever may detract from that. confidence, must weaken the security which is felt by the community in this mode of trial. I adhere to the doctrine laid down in Hare's case, 4 Howard, 187,
■ which seems to me to apply here. The officer is required by the nature of his duty, as well as by an oath, not to speak to the •jury himself on the subject of their deliberations, or to permit others to do so. This ceremony is a mockery, if a violation has no other effect than to subject the officer to punishment. If he may speak to them himself he may permit others to do so, and the door is thus thrown open to tampering, and the safety of trial by jury is invaded to an alarming extent. The duly of the officer is prescribed for the protection of the accused. If improper influences have been employed, it is but a poor boon to say to him that the officer is liable. The’officer may be willing to incur the punishment for the sake of gratifying his wishes, or for reward. One who thus violates his duty and his oath, should be subjected to the severest possible penalties, but that • does not purify the verdict; it should be set aside. It is danger *509 ous to permit a verdict to stand which is liable to suspicion. The jury should not know the opinion of any one; and more especially should they be kept in ignorance of public opinion, which is often the result of prejudice.
The general rule is, that a juror shall not be allowed to impeach the verdict by disclosing his own' misconduct, or his motive, or opinion, or that of his fellows; but this is a different question. The jury are not involved in the misconduct of the officer; that isa matter over which they have no control. A juror may be received to testify to improper attempts of a party to the suit to influence the minds of the jury. Chews v. Driver, Coxe’s Rep. 166. On the same principle we should be allowed to state the misconduct of the officer, who may be the instrument of the party.
Judgment reversed, and cause remanded.
Mr. Justice Smith concurred.