## SAM *v.* THE STATE, 31 Miss. Rep., 480.

### HOMICIDE.

Under the constitution of 1832, and the laws in force in 1855, the governor of this state had power to fill vacancies in the office of circuit judge by temporary appointment, till the election and qualification of a judge should occur; and this, although the unexpired term exceeded one year, and no special election had been ordered. Per HANDY, J.

After verdict it appeared that one of the jury had prejudged the case, although he had stated on his *voir dire* that he had formed or expressed no opinion. *Held* that the accused was entitled (under the rule laid over, in Nelson's case, 13 S. & M., 500, and Cotton's case, 31 Miss., 504) to a new trial. HANDY, J., *dissented.*

The credibility of witnesses swearing to a juror's prejudgement of the issue was to be determined entirely by the court to whom the application for a new trial was addressed. The court was to consider the characters and positions of the juror and witnesses respectively, and the manner and circumstances of the juror's statements on his *voir dire*, and from these evidences to determine; and a determination thus made should stand. Per HANDY, J., *dissenting.*

In error from the circuit court of Warren County. YERGER, J.

The prisoner was indicted for murder in the circuit court of Issaquena county, at the November term, A. D. 1855, thereof; which court was holden before the Hon. John M. Moore, who had received a temporary appointment from the governor, to supply the vacancy occurring from the death of the Hon. J. I. Guion. At a subsequent term of the court, holden by the Hon. J. S. Yerger, the prisoner pleaded in abatement to the indictment, that the said term of the court at which he was indicted, was illegal in this, that John I. Guion was elected judge of the

district in which that county was situated, in November, A. D. 1853, for the term of four years; that said Guion died on the 10th day of June, 1855, leaving an unexpired term of more than one year; that the governor immediately had notice thereof; that on the 3d day of July, A. D. 1855, he appointed said John M. Moore judge of said district; that the governor did not issue a writ for an election of a successor to said Guion, as required by law, and that said term of the court at which he was indicted, was holden on the 12th day of November, A. D. 1855, after the Hon. J. S. Yerger had been elected judge of said district.

To this plea the state, by the district attorney, filed the following replication: "And the said State of Mississippi, by Richards Barnett, acting as district attorney, for the third judicial district of the State of Mississippi, comes, and for replication to said plea of the said defendant Sam, by him above pleaded, says, that the said State of Mississippi, for anything in the said plea alleged, ought not to be precluded from having or maintaining her aforesaid indictment against the said defendant Sam, or from further prosecuting the same; because the said State of Mississippi says, that true it is, that a vacancy did occur in the office of circuit judge of the third judicial district of the State of Mississippi, (in which said district, said county of Issaquena is included,) by the death of the Hon. J. I. Guion, the late judge thereof, on the 10th day of June, A. D. 1855, and that at the time of the death of the said John I. Guion, there was unexpired, more than one year of the term of office for which said Guion was elected, as alleged in said defendant's plea. And the said State of Mississippi further admits that the governor thereof, on the 3d day of July, A. D. 1855, and after the death of the said Guion, did, as alleged in said plea, have notice of said death, and to fill the vacancy occasioned thereby, did, afterwards, to-wit, on the day and year last aforesaid, duly appoint and commission John M. Moore, Esq., as judge of the third judicial district as aforesaid, and that the said Moore accepted said appointment, and was duly qualified as such judge, and was duly authorized and empowered to hold the circuit courts in and for the several counties of the said third judicial district of the said state, in-

cluding the circuit court of the county of Issaquena aforesaid, from the time of his being commissioned and qualified as aforesaid, until his successor should be duly elected and qualified according to law ; and that the said John M. Moore, acting under the appointment so made as aforesaid, did, as judge of said third judicial district of the State of Mississippi, on the second Monday of November, a. d. 1855, being the 12th day of said month, and the time appointed by law for holding said court, and before his successor was commissioned and qualified according to law, hold the said term of the circuit court of Issaquena county, as he had authority and right to do, and not contrary to the statute in such cases made and provided, as is alleged in said plea, and at which term of said court so held by said John M. Moore, as aforesaid, the said defendant was indicted as in his plea is alleged, all which the said State of Mississippi is ready to verify. Wherefore," etc.

The defendant moved the court to strike out the replication, which the court refused to do. He then filed his general demurrer to the replication, which being overruled, he pleaded not guilty.

Upon the application of the prisoner, the venue was changed to Warren county ; and at the June term, 1856, of the circuit court of that county, he was tried and convicted of murder. He then moved the court for a new trial, " because one of the jurors—one E. R. Wells—who was empanelled to try him at the present term of the court (and by which said jury he was convicted) had said before he was sworn and empanelled in said cause as a juror, in the presence of witnesses, that said defendant was guilty as charged, and ought to be hung."

On the trial of this motion, he read to the court the affidavits of Charles A. Harris and Charlotte M. Hayes, in which they severally deposed that on the day previous to the trial of the cause, the said E. R. Wells, one of the jurors, who was empanelled to try the prisoner, stated in their hearing, and in the hearing of others, " That if the evidence in the cause should be the same as that given on a previous trial, which he had heard, that the defendant was guilty of murder, and ought to be hung." The prisoner and his counsel each made their affidavits, in which they sever-

ally deposed that they knew nothing of the said declarations of the said Wells, until after the trial of the cause. It was further shown that the juror, Wells, was examined on his *voir dire* before he was accepted and empanelled as a juror, and that he then denied that he had formed or expressed an opinion as to the guilt or innocence of the prisoner. The district attorney offered as rebutting evidence, the affidavit of said Wells, in which he deposed that he had not made the statement attributed to him by the witnesses Harris and Hayes; but this affidavit, upon objection by the prisoner, the court ruled as incompetent evidence, and refused to consider it. No other evidence was offered by either party, and the court overruled the motion.

The prisoner sued out this writ of error.

*H. A. H. Lawson*, for the prisoner, made the following points :

1. A new trial should have been granted, because the prisoner was not tried by an impartial jury. The proof shows clearly that the juror, Wells, had previously expressed an opinion, formed from hearing the evidence, that the prisoner was guilty. See Whart. Am. Cr. Law, 1022; Childress v. Ford, 10 S. & M., 25; The People v. Vermilyea, 7 Cow. R. 128; Sam v. The State, 13 S. & M., 189; Nelms v. The State, ib., 500; Cody v. The State, 3 How. (Miss.), 27.

2. The court in which the prisoner was indicted was illegally constituted. Under the circumstances, the appointment of John M. Moore, Esq., as judge, was void. See Constitution of Mississippi, art. 4, § 13; ib., art. 5, § 13; Hutch. Code, 164.

*D. C. Glenn*, attorney general.

It is urged that Sam had not a fair trial, because Wells, a juror, declared his opinion before trial, that if the evidence turned out as on a former trial, Sam ought to be hung. This fact is proved by several witnesses, and Sam swears he was ignorant of it until after his trial was over. The juror was offered by the state to prove the reverse, but the court refused to hear his affidavit.

It is true, that when it appears, after the trial, the juror had prejudged the case, it is good ground for a new trial. See 2 Salk., 645; 1 Denio, 281; 1 Wharton State Tr. 606; 7 Cowan, 108; 1 Leigh, 598; 9 Dana, 203; 19 Ohio, 198.

A qualified opinion, however—such as the one in question—dependent on a particular state of facts, will be no ground for a new trial.  2 Virg. Cases, 510, 516; 5 Rand., 655; 7 Watts & Serg., 421; 1 Yeates, 378.

The court should have received the affidavit of the juror.  3 Greenl., 204; 1 Wharton State Tr., 606.

## FISHER, J.:

Upon the point, as to the refusal of the court below to grant a new trial in this case, we are of opinion that the court erred. The case we conceive falls clearly within the rule laid down by this court in the case of Nelson v. The State, 13 S. & M., 500; and of Cotton v. The State.  The affidavits, supposing them to have received full credit by the court, and nothing appears to the contrary, must be taken and treated as placing the juror in the same attitude in which he would have stood, if he had stated the facts deposed to, himself in open court, when brought forward as a juror, and examined, touching his fitness to sit on the trial of the prisoner.

Judgment reversed, and new trial granted.

## HANDY, J., dissenting:

Two questions are presented in this case.  First. Whether in case of the death of a circuit judge, whose term of office has more than one year to run, the governor has power to appoint a judge to discharge the duties of the office, until an election to fill the vacancy be held.  Second. Whether the court erred in overruling the motion for a new trial based upon the affidavits, showing that one of the jurors who tried the cause had prejudged it, to the prejudice of the prisoner.

1. The 13th section of the fifth article of the constitution provides, that "all vacancies not provided for in the constitution shall be filled in such manner as the legislature after the adoption of the constitution shall provide. An act was passed providing that "whenever any vacancy shall occur in any state office, when the unexpired term thereof shall have more than one year to run, it shall be the duty of the governor when notified of such vacancy to issue a writ of election, requiring an election to be

held to fill the unexpired term of said office in the particular district or in the state, which election shall be held in the case of filling any vacancy in the office of a district officer, on thirty days' notice; and in case of a state or general officer, on sixty days' notice, provided however, that the governor of the state may make a temporary appointment to any office, a vacancy in which occurs, to have effect and be in force until the election so ordered by him shall have been held, and the successor or person elected to the office be duly qualified in the manner prescribed by this act." Hutch. Dig., 164.

The appointment in question in this case having been made in virtue of the proviso of this act, its validity would appear to be clear and unquestionable.

But it is objected. First. That it was the duty of the governor immediately on receiving notice of the death of the incumbent, to order an election to be held, on thirty days' notice, and that the temporary appointment could not extend beyond the period at which the election was required to be held, and until the new judge should be qualified; and that as the notice of the vacancy under consideration, was received by him in June, and the election was not held until November, the appointment was void.

We do not consider this a proper view of the statute. In providing that it should "be the duty of the governor *when* notified of such vacancy," to order the election, the term *when* was doubtless intended to refer to the *condition* upon which the election should be ordered, and not prescribe *the time* when it should be ordered; and it should be understood as if the language was *upon being notified.* This is frequently the sense of the word in technical language.

Again, it is objected that the governor has no power to make a temporary appointment, until he has first issued the writ of election, and fixed the day on which the election shall be held. But the statute does not in terms render the performance of the former duty dependent upon the performance of the latter. It is made the duty of the executive generally to issue a writ of election to fill the vacancy, when the unexpired term shall exceed one year; and, as above shown, this duty must be per-

formed *upon his being notified* of the vacancy. The proviso
then confers the power to make a temporary appointment, to
continue in force until election *so ordered* shall have been held,
and the successor qualified. What is to be understood by the
terms "so ordered?" They do not mean that the election must
be ordered at the time of his receiving notice of the vacancy, as
is above shown. It can only, therefore, be understood to mean,
that the temporary appointment shall continue in force until
the election, which the executive in the preceding part of the
act is required to order, shall have been held, etc.

It is certainly his duty to order the election in good faith and
without necessary delay; and we think, that the spirit of the
law, and of the constitution, required it should be ordered speedily.
He may not perform his duty in this respect with proper dili-
gence. But this does not necessarily render a temporary appoint-
ment made by him void.

Nor is the fixing of the day of election previous to making
the temporary appointment necessary, in order to fix the period
for which the appointee shall hold the office. For if the election
be ordered within such time as a faithful performance of that
duty by the executive requires, the appointee is bound to take
notice of the time so appointed for the election, and also, of the
fact of the election and qualification of his successor; and it is
not necessary that the period of the election shall be specified
in the commission.

The special appointment must be presumed to have been
made because the governor considered that the emergency of the
public interest required it to be made; and the power to deter-
mine the question of the necessity for the appointment, is con-
ferred upon him by law. He is also required to order an elec-
tion to fill the vacancy. But it appears to me, that neither by
the terms of the statute nor by the reason upon which the two
acts are required to be performed, does the validity of the former
act depend upon the previous performance of the latter.

Another objection is founded on the fifth section of the fourth
article of the constitution, which is, that " all vacancies that may
occur in said court," (that is the high court of errors and ap-
peals,) " from death, etc., shall be filled by election as aforesaid,

provided however, that if the unexpired term do not exceed one year, the vacancy shall be filled by executive appointment." The word " *court*" in this section is sometimes, but erroneously, printed in some prints of the constitution " *courts*." But both the context and the correct prints of the constitution show that the high court of errors and appeals only is referred to; and as this objection rests solely upon the assumption that other courts were referred to, it is fully answered by the correct print of the constitution.

But, moreover, this provision of the constitution referred to the election or appointment of a judge, to fill the entire unexpired term. If that term exceed one year, it is required to be filled by election, which cannot be held without notice of thirty days. During that period, there would be an *interregnum*, or temporary vacancy in the office, not contemplated or embraced by this section of the constitution, and which the public interest might imperatively require to be supplied; and this case, not being especially provided for in the constitution, is embraced by the 13th section of article 5th, and the act of 1833, passed in pursuance of that section; by which the power to make a temporary appointment until the election and qualification of the successor, is conferred upon the executive.

2. In support of the motion for a new trial, the prisoner introduced the affidavits of two witnesses, stating that on a day previous to the trial of the case at that term, they had heard E. R. Wells, one of the jurors who tried the case, and returned the verdict, say that if the evidence on the trial should be the same as that given upon a previous trial of the same case, and which said juror had heard, the prisoner was guilty of murder, and should be hung; also, the affidavits of the prisoner and of his counsel who defended him on that trial, that they did not know until since trial, that the said Wells, or any of the jurors, had expressed any opinion in relation to the prisoner's guilt.

It appears to be well settled, that if, after the trial, it appears that a juror had prejudged the case, but had stated on his *voir dire* falsely that he had not formed or expressed an opinion upon it, and that the prisoner who was prejudiced thereby, was ignorant of the fact at the time, a new trial will be granted.

Wharton Amer. Crim. Law, (2nd ed.,) 905, and cases there cited ; 1 Graham & Wat. on New Trials, 129.

But a qualified opinion, dependent on a particular state of facts, will not be a ground for a new trial. As where the juror said, that if the prisoner killed the man, he ought to be hanged. Commonwealth v. Hughes, 5 Rand., 655 ; or that if the prisoner had made the attempt to commit the crime charged against him, he ought to go to the penitentiary. Kennedy v. Commonwealth, 2 Virg. Cases, 510.

If it appeared by the record that the judgment of the court below, overruling the motion for a new trial, was based solely upon the ground that the opinion of the juror, as shown by the affidavits, was qualified and hypothetical, we could not sanction that view.

It clearly appears, from the affidavits, taking them to be true and entitled to entire credit, that the juror had formed the opinion, *from having heard the testimony* on a previous trial of the prisoner, that he was guilty ; that the opinion must have rested upon his mind at the time he made the declaration ; and, if he spoke truth, it is impossible to conceive but that he had formed an opinion that it would have required testimony to remove ; the opinion expressed could not be said to be dependent upon the fact that the prisoner's guilt should be established, and was therefore not hypothetical ; but it was certain and fixed in the mind, and dependent on its being carried out, only on the fact that the same evidence should be introduced on the trial then to be had, which had been adduced on a previous trial.

But it does not appear by the record, that the motion for a new trial was denied on this ground, nor upon any particular ground. And, therefore, if there be any ground on which the court might have refused the motion, it must be presumed that the court acted on that ground.

The question of the credibility of the witnesses who had sworn as to the juror's expression of opinion, was to be determined entirely by the court. It was a matter submitted to its sound, legal discretion. It was the duty of the judge to consider closely the character and position of the witnesses, which may have been known to him, and the character of the juror,

the circumstances under which he may have been elected and empanelled on the jury, and the examination to which he may have been subjected at that time, and to determine from all these facts and circumstances whether the witnesses should be credited. It was competent for him to determine, from these circumstances, as well as from his own knowledge of the characters of the witnesses and of the juror, that they should not be credited. The State v. Duestoe, 1 Bay., 380. If this was not true, any party convicted of crime would readily be able to procure some corrupt witness, whose character was not sufficiently known to the community at large, to cause the proper legal testimony to impeach his credit to be adduced, to come forward and swear, that any one of the jurors had made use of declarations of the prisoner's guilt. These declarations could easily be stated to have been made under such circumstances that no witness could be adduced to disprove them ; and if the affidavit of the juror would not be admissible for that purpose, it might be impossible to counteract the legal effect of the false statement of such a witness, and a most serious blow would be struck at the whole criminal jurisprudence of the country. Every verdict, however just and fairly made, would be liable to be set aside upon testimony not intrinsically entitled to credit ; and the facility with which this might be done, would endanger every verdict. From the nature of the case, therefore, the judge must have the power to scrutinize the testimony, and to settle the question of the credibility of the witnesses. If the court refused the motion upon this ground, it was, therefore, a matter within its legal discretion ; and as every presumption must be indulged in favor of the propriety of the judgment, which is not removed by the record, it must be taken that the court acted properly on this ground.

This presumption is much strengthened, when we consider the fact that the affidavits of these witnesses was in direct contradiction of the sworn statements of the juror, made when he was tried and elected as a juror, so that the question of the credit due to the respective parties must have been directly presented for the determination of the court, and may be very justly taken to have been the formation of its action.

I am, therefore, of the opinion, on the first point, that the judgment is correct, and on the second point, that we should not be warranted in declaring it wrong ; and that the judgment should be affirmed.