ISAAC BROWN *v.* THE STATE.

1. JURORS. *Competency. Opinion. Bias.*

   No person is a competent juror who has a settled opinion as to the existence of a fact, so connected and usually associated with the main fact in issue that it is difficult to disbelieve the coexistence of the latter.

2. JURORS. *Householder. What constitutes.*

The fact that a juror has a rented store in which he sleeps does not constitute him a householder, within the meaning of the statute (Code, 1871, § 724) prescribing the qualifications necessary to sit on juries. *Nelson* v. *State, ante,* 286, cited.

3. SAME. *Challenge. Curing error.*

The erroneous overruling of a challenge for cause, if the prisoner afterwards peremptorily challenges the juror, is no ground for reversal, unless prejudice is shown; as, for instance, by the exhausting of the peremptory challenges before the panel is complete.

4. SAME. *Incompetency. When ground for new trial.*

If, however, the prisoner does not exercise his right of peremptory challenge, and the incompetent juror, under the erroneous ruling, is sworn and acts on the jury, the prisoner's legal rights are invaded, and the verdict will be set aside.

5. PERJURY. *Witness. Juror. Competency. Opinion.*

In a prosecution for perjury, committed by swearing to an *alibi* in an arson case,.a juror who has formed an opinion as to the guilt or innocence of the person tried 'for arson is incompetent, although he has formed or expressed none as to the person charged with perjury.

6. SAME. *Evidence. Relevancy.*

If the charge is falsely swearing that the person tried for arson was at the witness's house from half-past seven on the night before the fire until four o'clock in the morning when it occurred, it is material to prove that he was in a store near the scene of the fire until midnight.

7. SAME. *Competency. Hearsay.*

Declarations of the person accused of arson, made before his trial, and tending to show his guilt, and therefore contradictory of the *alibi*, are incompetent as evidence in the prosecution for perjury, unless the defendant in that case was present when they were made.

8. SAME. *Indictment. Knowledge of falsity of oath.*

The averment in an indictment for perjury that the accused knew that the statement was false is necessary only when the oath was as to the witness's belief ; and, if it was absolute, the averment is surplusage, and the indictment should be construed as if it was omitted.

9. SAME. *Wilfully and corruptly false. Mistake and inadvertence.*

It must be shown that the oath was wilfully false, and if its falsity resulted from mistake or inadvertence, there is no perjury ; but it is unnecessary for an instruction requiring it to be wilfully false to state that it must be corruptly so, since the former implies the latter.

10. SAME. *Rule as to two witnesses. Instructions.*

The jury should be informed, in some part of the instructions in a trial for perjury, that, before they can convict, the fact that the oath was false must be shown to their satisfaction by the testimony of two witnesses, or by one witness and corroborating circumstances.

11. Perjury. *Indictment. Averment. Certainty.*

　　An indictment for perjury is sufficient, under Code 1871, § 2667, although it fails to set out, with the highest degree of certainty, the county in which the indictment was found on the trial whereof the false testimony was given, or the plea which was filed in that case.

Error to the Circuit Court of Lincoln County.

Hon. J. B. Chrisman, Judge.

The indictment in this case, which, as stated on its face, was found by the grand jurors of Lincoln County, Mississippi, impanelled in the Circuit Court of said county, charged the plaintiff in error, in the manner prescribed by Code 1871, § 2667, with perjury, committed on the trial of the case of *The State* v. *Samuel Williams* at a former term of the Circuit Court of said county, in a matter material to the issue which was then being tried by a jury, before Hon. J. B. Chrisman, judge of said court.

*A. C. McNair*, for the plaintiff in error.

1. The court erred in regard to the juror, W. C. Mason, who had a fixed opinion concerning Williams's guilt. In order to secure to the prisoner a trial by an impartial jury, which is the policy of the law, it is essential that the jurors' minds should be entirely neutral, and free from all knowledge of the question to be tried. Williams's guilt was so blended with that of the prisoner that it was impossible to believe one without the other, especially as the State introduced in this case the testimony on which Williams was convicted. If a juror has formed an opinion as to a leading or controlling fact in the issue to be tried, he is disqualified. 1 Burr's Trial, 417. If the jury believed Williams guilty, the prisoner's guilt, in this case, followed almost as a natural consequence.

2. The juror Krause should also have been rejected. Jurors must be householders. Code 1871, § 724. A householder is a master or chief of a family; one who keeps house with his family. *Woodward* v. *Murray*, 18 Johns. 400. He is a person having and providing for a household. *Griffin* v. *Sutherland*, 14 Barb. 456; Bouvier's Law Dic. 673; *Bowne* v. *Witt*, 19 Wend. 475. No one is a householder who is not the head of a family. Whenever you take away the idea of family, you destroy the meaning of the term. Construed

in this light, Krause, who was an unmarried man without a family, was not within the statutory rule. The fact that he slept in his rented store did not make him a householder.

3. The court also erred in its action on objections to the evidence. The material question on the trial of the arson case was the whereabouts of Williams when the fire took place, not where he was on the night before. And, in the case at bar, it was only calculated to confuse the jury, and withdraw their minds from the issue, when evidence showing his locality hours previously was admitted. The declarations made by Williams showing his guilt, while admissible at the trial for arson, were clearly incompetent as against the plaintiff in error. Even if the two persons had been jointly indicted, admissions of guilt by one in the other's absence would have been incompetent against the latter. The threats were not made in presence of the plaintiff in error, nor with reference to the offence with which he is charged.

4. The indictment charged that the defendant knew that his testimony was false, and the issue presented was his knowledge of the fact; yet the court charged the jury to convict if he testified to the facts, without knowing whether they were true or false. Under this indictment he could not be convicted, unless he knew that the statements were false when he made them. *Norris* v. *State*, 33 Miss. 373. The first charge should also have stated that the testimony must be wilful and corrupt. Under this instruction, the prisoner, although he believed the facts to which he swore, or spoke from inadvertence without any evil intent, would be convicted. Code 1871, § 2660; *Cothran* v. *State*, 39 Miss. 541.

5. The instructions should have informed the jury that, before they could convict the prisoner, the charge must be affirmatively proved by two witnesses, or one witness and corroborating circumstances; and the failure to do this is error. *State* v. *Heed*, 57 Mo. 252. Two witnesses are necessary to prove the falsity of the prisoner's former testimony. Hawk. P. C. b. 2, c. 46, § 6; 2 Starkie Evid. 626; *Champney's Case* 2 Lewin, C. C. 258; *Regina* v. *Yates*, Car. & M. 132. The testimony of a single witness is insufficient to convict on a charge of perjury. 4 Black. Com. 358; Roscoe's Crim. Evid.

765 ; 1 Greenl. Evid. §§ 257, 258 ; *United States* v. *Wood*, 14 Peters, 430.

6. The motion in arrest of judgment should have been sustained, because this indictment failed to show the county in which the indictment against Williams was found, and also because it did not show his plea or traverse in that case with sufficient certainty. It is essential that these facts should be plainly set forth. Judgment on an- indictment defective in those particulars must be arrested. 2 Wharton Crim. Law, § 2248 ; *State* v. *Gallimore*, 2 Ired. 372.

*T. C. Catchings*, Attorney General, for the State.

1. Even if the juror Mason was incompetent, the plaintiff in error, who could have protected himself and failed to do so, cannot complain. After his challenge for cause had been disallowed, he should have challenged peremptorily. If, in such case, he had exhausted his peremptory challenges before the jury was completed, he would be entitled to a reversal. But if, after the panel was complete, he had not exhausted his peremptory challenges, or if the record is silent on the subject, as in this case, he has not made it appear that he was injured by the ruling of the court. The juror was, however, competent. It does not follow that, because he had an opinion as to the guilt or innocence of Williams, he also had one as to the accused. The former might have been guilty and the latter innocent. To make the plaintiff in error guilty, he must have sworn wilfully and corruptly that Williams was with him on the night of the fire. The question was not so much whether Williams was with the accused, as whether the latter so made oath wilfully and corruptly. Hence the opinion which Mason entertained as to Williams's guilt or innocence in no way prevented his being an impartial juror in the trial of Brown. While Krause was not a householder, and was therefore incompetent, the plaintiff in error cannot complain of his admission to the jury-box, for the same reason that he cannot complain as to Mason ; that is to say, he does not show that he used every means provided by law to protect himself against this juror.

2. The evidence as to Williams's whereabouts on the night before the fire was relevant, as contradicting the testimony of the accused on the arson trial, that Williams and

himself remained together from 7.30 o'clock that night until the fire occurred next morning. The declarations and threats of Williams, as deposed to by a number of witnesses, were properly admitted. They tended to connect Williams with the burning. If Williams did the burning, Brown's statement that Williams was with him was not true. The evidence was introduced as tending to show that Brown's testimony was false, and was, therefore, relevant.

3. The objection to the instruction is not well taken. The words "knew to be false" are mere surplusage, in no manner a part of the description of the offence, and consequently may be rejected. Under either the common law or our statute, those words are wholly unnecessary, and, if they were omitted from the indictment, it would still contain a valid charge of perjury. 2 Wharton Crim. Law, § 2198 ; Code 1871, § 2660 ; 2 Wharton Precedents, 577. The charge that the defendant knew the matters testified about to be false is required only where he has sworn to his belief. 2 Wharton Crim. Law, § 2261. Nor did the instruction require the jury to convict the prisoner, although they might have believed that he honestly supposed he was telling the truth. On the contrary, they were told that it must appear that the testimony was wilfully false or given by the defendant when he did not know whether it was true or false.

4. The rule requiring two witnesses or one witness and corroborating circumstances was adopted, because otherwise there would be nothing more than the oath of one man against another. 1 Greenl. Evid. § 257. That rule, therefore, can have no application where the evidence is circumstantial. Perjury may be established without any direct testimony whatever as to the falsity of the oath, which may be shown by circumstances. The motion in arrest of judgment was properly overruled ; for, under Code 1871, §§, 2660, 2667, the averments stated to be not clearly made need not be made at all.

GEORGE, C. J., delivered the opinion of the court.

The plaintiff in error was indicted for perjury, charged to have been committed on the trial of an indictment for arson against one Samuel Williams. The testimony charged to be false was

to the effect that said Samuel Williams was at the house of said Brown at 7.30 o'clock on the night preceding the burning, then went to bed with Brown, and slept with him till the next morning at 4 o'clock, when they were awakened by an alarm given of the fire. The effect of this evidence would be to show the innocence of Williams by establishing an *alibi*. The plaintiff in error was convicted, and sentenced to the penitentiary for ten years, and from this judgment he sues out this writ of error. He has made several assignments of error in this court, most of which it will be necessary to notice in order to lay down the proper rules for the guidance of the court below in conducting the new trial, which we have decided to grant.

When the jury was being impanelled, W. C. Mason was examined by the court touching his qualifications as a juror, and on such examination stated that he had not formed or expressed any opinion as to the guilt or innocence of the prisoner, but had formed a decided and fixed opinion as to the guilt or innocence of Williams, on whose trial for arson the perjury was charged to have been committed by the prisoner. When this answer was made, the prisoner challenged Mason, as a juror, for cause, his challenge was overruled, and Mason was sworn as a juror. It is insisted here, in behalf of the State, that this ruling is correct; and that, if it is not, the prisoner cannot complain, as he could have excluded Mason from the jury by a peremptory challenge; and that it does not appear that his peremptory challenges were exhausted before the complete impanelling of the jury.

The rule requiring impartiality in jurors has been enforced with great strictness in this State. As early as the year 1840, a juror was held incompetent, in a civil case, who was the surety of the defendant. *Ferriday* v. *Selser*, 4 How. 506. And in *McGuire* v. *State*, 37 Miss. 369, it was held that it was a valid objection to a juror in a criminal trial that he had been indicted and was untried for an offence of the same kind as that charged in the indictment. The rule, too, against the qualifications of jurors who have formed an opinion in relation to the matter in controversy has been applied with great rigor in this State. *State* v. *Flower*, Walker, 318; *State* v. *Johnson,*

Walker, 392 ; *Cody* v. *State*, 3 How. 27 ; *Noe* v. *State*, 4 How. 330 , *King* v. *State*, 5 How. 730 ; *Lewis* v. *State*, 9 S. & M. 115 ; *Childress* v. *Ford*, 10 S & M. 25 ; *Nelms* v. *State*, 13 S. & M. 500 ; *Sam* v. *State*, 31 Miss. 480 ; *Williams* v. *State*, 32 Miss. 389 ; *Ogle* v. *State*, 33 Miss. 383 ; *Beason* v. *State*, 34 Miss. 602 ; *Alfred* v. *State*, 37 Miss. 296 ; *Williams* v. *State*, 37 Miss. 407 ; *George* v. *State*, 39 Miss. 570 ; *Josephine* v. *State*, 39 Miss. 613. It is declared that a juror should be *omni exceptione major*, and entirely free from every influence likely to produce the slightest bias towards either party, and with no motive to find a verdict for one or the other, save a sense of duty and justice. *Ferriday* v. *Selser*, *ubi supra*.

The intent of the law is that the juror shall come to the consideration of the case unaffected by any previous judgment, opinion, or bias, either as respects the parties or the subject-matter in controversy. The jury are sworn to decide the issue according to the evidence before them. It is expected that this oath shall be observed and this duty performed. This cannot be, if a juror has a fixed and settled opinion on the subject-matter in controversy, or as to so much of it as would materially affect his judgment on the whole. As a general rule, the inquiry in a criminal case is as to the state of the juror's mind on the question of the guilt or innocence of the accused. If he has a fixed opinion on the subject, he is excluded, because he goes into the jury-box with an opinion either for or against the prisoner, which must, according to the laws of the human mind, operate as a substitute for evidence. We know that, where a fixed opinion is thus entertained, the natural tendency of the mind is to seek for that in the evidence which will tend to confirm it, and to weaken or explain away the evidence which is against it. The mind is not, therefore, free to act on the evidence. This opinion may exist as to a subject so involved in the question of guilt or innocence that it cannot well be separated from it ; or at all events it may be on a subject about which the juror's mind is to act in reaching a conclusion, and so intimately associated with the question of guilt or innocence that, in the ordinary experience of mankind, if the fact be as believed to exist by the juror, it will generally determine the main question of guilt or inno-

cence.    We do not mean to say that, if the juror has made up
his mind that a fact exists which is a necessary ingredient in
the conclusion of the guilt of the accused, that will disqualify
him, if, notwithstanding the existence of the fact, the party
may be, and in similar cases frequently is, innocent; and he in
fact does rest his innocence upon other facts consistent with
the concession of the existence of the fact about which the
juror has made up his mind.    Thus it has been held that a
juror who has formed the opinion that the accused did the kill-
ing is not incompetent if he has not formed an opinion as to
whether he was guilty or innocent of crime in the act of kill-
ing.    Notwithstanding the killing, the slayer may be, and
frequently is, innocent.    *Lowenberg* v. *People*, 27 N. Y. 336;
*O'Brien* v. *People*, 36 N. Y. 276.    On the other hand, it has
been held that, when the fact about which the juror has
formed an opinion necessarily determines the issue in contro-
versy, he is not competent, though he has formed no opinion
as to whether the plaintiff or defendant ought to succeed.
Thus, in an action against a sheriff for trespass, when the
defendant justified under a distress warrant for rent in arrear,
it was held that a person who had formed and expressed an
opinion that there was no right or title to the rent for which
the distress was made, was incompetent.    *Blake* v. *Mills-
paugh*, 1 Johns. 316.    It will be noted, however, that, in
New York, where this decision was made, the sheriff making
a distress stands in the exact situation of the landlord; and, if
there be no rent due, he is a trespasser.

The case at bar is not so strong as that against the compe-
tency of the juror; for the prisoner may be innocent, though
Williams be guilty.    The charge in the indictment, how-
ever, is of falsely testifying to an *alibi* for Williams.    If the
testimony of the prisoner, on which the perjury is assigned
is true, it is impossible that Williams could be guilty, since
there is not the slightest pretence for supposing that he did
the burning by the hand of another.    A conviction in the
mind of the juror that Williams was guilty, therefore, neces-
sarily involved a belief that the testimony of the prisoner on
the subject of the *alibi* was false.    Its falsity did not neces-
sarily make Brown guilty; for he could still make the de-

fence that it was not wilfully and corruptly false. But, when the conclusion is reached that the testimony is false, the point is very nearly reached that the prisoner is guilty of perjury. The main ground of the prisoner's defence is swept away by the belief of the juror in the falsity of the *alibi.* The question of the guilt of the person accused of the arson is so involved in the charge of perjury on the part of him who swore to an *alibi* in his behalf, that it is difficult, if not impossible, to sever the two ideas. It is impossible to lay down any precise general rule on this subject. The most we can do is to decide particular cases as they arise; and, in doing this, whenever we discover that a fact, as to the existence of which the juror has a clear and settled conviction and opinion, is so connected with the main fact in issue that it is difficult to disbelieve the co-existence of the main fact which is usually associated with the fact believed, we hold the juror incompetent. It turned out in this case that, in the trial of the prisoner, the guilt of Williams was made the basis of the disproof of the *alibi.* There was no direct proof against the *alibi,* or the testimony of Brown, so far as it related to the time of the burning. One of the main grounds laid in the evidence for the belief that the testimony of the prisoner in favor of the *alibi* is false is that, from all the circumstances, Williams was guilty of the arson. Support for this view is found in the case of *Davis* v. *Walker,* 60 Ill. 452.

The objection taken to the juror Krause, upon the ground that he was not a householder, should have been sustained. The fact that he had rented a store and slept in it did not constitute him a householder, as was decided in the case of *Nelson* v. *State, ante,* 288. But it is urged that the prisoner should have resorted to his peremptory challenges, which are not shown to have been exhausted, and thus prevented these jurors from being sworn as such. It is true that, if the prisoner had resorted to his peremptory challenges, and excluded these jurors, the mere erroneous opinion of the judge holding them to be competent would not have been, *per se,* error entitling him to a new trial. The error must be shown to have been prejudicial to him before he can claim a reversal. This prejudice would have been shown, if he had challenged per-

emptorily, and it had appeared that, before the jury was fully completed and impanelled, the prisoner had exhausted his peremptory challenges. *Ferriday* v. *Selser*, 4 How. 506 ; *Ogle* v. *State*, 33 Miss. 383 ; *Gilliam* v. *Brown*, 43 Miss. 641 ; *McGowan* v. *State*, 9 Yerger, 184.

But where the prisoner chooses not to exercise his right of peremptory challenge, and the incompetent juror, under an erroneous ruling of the judge, is actually sworn, and acts as a juror, the question presented is a very different one. In that case, the prisoner, notwithstanding his objections, has not had a trial by an impartial jury ; nor is he obliged, in order to exclude an incompetent juror held competent by the court, to resort to his peremptory challenges. The right of peremptory challenge is a valuable one, and is allowed to the prisoner to exclude those whom he may suspect but cannot prove have a prejudice against him. It is to be exercised at his discretion, and without the assigning of any cause. He has the right to have the competency of a juror challenged by him rightly decided by the court, and to have him set aside, if he is incompetent. He may or may not, in his discretion, use his right of peremptory challenge as to such an one. If he declines to do so, and an incompetent and partial juror actually is sworn and tries the case, his legal rights have been invaded, and the verdict will be set aside. *People* v. *Bodine*, 1 Denio, 281 ; *Hooker* v. *State*, 4 Ohio, 348.

It is next assigned for error that the court permitted the witness Eugene and several others to testify that the prisoner was at Eugene's store in the town of Brookhaven from about 7.30 to 11 o'clock of the night on which the fire took place. It is urged that, as the fire occurred at 4 o'clock in the morning, so much of the testimony of the prisoner as shows the whereabouts of Williams in the same town and at a time which would still leave to him the opportunity to go to the house and set it on fire, is immaterial, and hence that the testimony of Eugene and others objected to was improper, because it tended only to disprove so much of the testimony of the prisoner as was immaterial. We do not consider this position sound. The testimony of the prisoner that Williams was with him from 7.30 to 11 o'clock was a part of his statement that Wil-

liams was with him at his house from 7.30 P.M. to 4 A.M. It tended to support the credibility of so much of his statement as showed that Williams was at another place than the scene of the arson at the time of the burning and shortly before it. The proof that this testimony was false, so far as related to the time between 7.30 and 11 o'clock, tended to throw discredit on his whole testimony, and was a material part of the means to be used to show the falsity of all of it. Further, this testimony of the prisoner, being thus material to support the credibility of the statement as to the *alibi* at the very time of the burning, was material evidence in the arson case, and upon it perjury may be assigned.

It is next insisted that it was error to permit the witnesses Taylor, Martin, Banks, and Isaacs to testify as to declarations made by Williams which tended to criminate him as the author of the burning. Some of these declarations consisted of direct threats to burn Smith's house, and some of threats to do Smith an injury, — all made before the burning, and in the absence of Brown. One of these witnesses also testified to what Williams said when the witness and Williams were returning from the scene of the fire immediately after it took place. We regard all these exceptions as well taken. It is true that Williams's guilt became a material fact on the trial, because, as before shown, it tended to disprove the *alibi* sworn to by the prisoner; but this fact was to be established in a proceeding in which Williams was not a party, in a controversy between the State and the prisoner Brown. So far as the question of Williams's guilt affected him, it was competent to establish it by his own declarations or admissions; but, when it is to be established as a criminating circumstance against Brown, it must be established in the same way that all other facts in the case are to be established against him.

It is insisted also as ground for a reversal that the court erred in giving the first instruction asked for by the State, because the court told the jury that they must convict if they are satisfied that Brown swore wilfully falsely to the matters charged in the indictment, or that such testimony was given by the prisoner when he did not know whether it was true or false. On

this two specific objections are made, — 1. That, as the indictment charged that the prisoner *knew* his testimony was false, he cannot be convicted unless this knowledge be proved; 2. That the alternative proposition in the instruction — " or that such testimony was given by the prisoner when he did not know whether it was true or false " — was erroneous.

The averment in an indictment for perjury that the accused knew that the matter sworn to was false is necessary only where the oath is as to the belief of the affiant. In such cases it is held that knowledge of the affiant to the contrary must be averred. *State* v. *Lea*, 3 Ala. 602; 2 Wharton Crim. Law, § 2261. In all other cases, such averment is unnecessary. *State* v. *Raymond*, 20 Iowa, 582, 585. In the case at bar, the charge is that the oath was absolute. The averment that the accused " well knew the statement to be false " was unnecessary, and therefore surplusage; and the indictment is to be construed exactly as if these words were omitted from it. The second objection to the charge has more force in it. By the alternative proposition contained in the latter clause of the instruction, the jury were directed to convict the prisoner, if they believed he made the oath charged in the indictment, and that such testimony was given by him " when he did not know whether it was true or false." The objection to this part of the charge is that it omits to tell the jury that the oath must have been corruptly taken. It is essential to the crime of perjury that the oath shall be wilfully false. If the falsity result from mistake or inadvertence, there can be no perjury. 2 Wharton Crim. Law, §§ 2199. The criticism made on the first branch of the instruction, that it was necessary to state in it that the oath was *corruptly* false, is not well founded, since it is stated that it must be *wilfully* false. If wilfully false, it is necessarily corrupt.

Neither in the charges asked for by the State, nor in those asked for by the accused, is there any allusion to the rule requiring the testimony of two witnesses, or that of one witness and corroborating circumstances, to prove the falsity of the oath. The charges are in the usual form — " if the jury believe from the evidence," &c. It is now complained that this omission was error, and we do not doubt that it is. In some

part of the charges the jury should have been informed that, before they could convict, it must be shown to their satisfaction by the testimony of two witnesses, or the testimony of one witness and corroborating circumstances, that the oath was false.

It is next insisted that the motion of the prisoner in arrest of the judgment should have been sustained. The objections urged against the indictment cannot be sustained. The indictment satisfies the requirements of Code 1871, § 2667.

*Judgment reversed and cause remanded.*