### Nash v. State

No. 42404          December 10, 1962          147 So. 2d 499

*Harold W. Davidson,* Carthage, for appellant.

*G. Garland Lyell, Jr.*, Asst. Atty. Gen., Jackson, for appellee.

Kyle, J.

The appellant, L. W. Nash, was indicted by the grand jury at the March 1962 term of the Circuit Court of Attala County for the crime of perjury. The jury, after hearing the evidence, returned a verdict of guilty as charged and recommended mercy of the court. A judgment was accordingly entered sentencing the appellant to imprisonment in the state penitentiary for a term of three years; and from that judgment the appellant has prosecuted this appeal.

The indictment charged that the appellant, L. W. Nash, on March 7, 1962, being then and there a witness before the grand jury in a criminal case which was being investigated by the grand jury, wherein the State charged Johnny Welch with the murder of one Clarence

Griffin, the appellant having been duly sworn as a witness to testify "did unlawfully, willfully, knowingly, corruptly and feloniously swear and say that at the time of said homicide the said Clarence Griffin did have a knife in his hand and was threatening the said Johnny Welch at the time of and immediately before the said Johnny Welch struck Clarence Griffin the fatal blow; whereas in truth and in fact the said Clarence Griffin did not have a knife in his hand at that time and was not threatening Johnny Welch at the time and immediately prior to the time the said Johnny Welch struck Clarence Griffin the fatal blow, and that the falsity of the testimony given * * * by the said L. W. Nash was well known to the said L. W. Nash at the time he gave said testimony."

The charge against the appellant as shown in the indictment grew out of the appellant's testimony before the grand jury during the March 1962 term of the court while the appellant was being questioned concerning the killing of Clarence Griffin by Johnny Welch sometime during the month of November, 1961. The killing occurred about 9 o'clock on Saturday night at a point on the roadside near the home of Henry Griffin, on State Highway No. 35, where a large number of Negroes had gathered for social recreation and mutual entertainment. The quarrel and fight started when Johnny Welch became involved in an argument with his cousin, Floyd Greer, and Clarence Griffin, Henry Griffin's brother, came forward and attempted to stop the argument. Welch told Clarence that he didn't have anything to do with the argument and to get back; other words passed between them, and Welch struck Griffin on the head with a four-way lug wrench and killed him. The factual issue involved in the perjury charge was whether or not Clarence Griffin, the deceased, was advancing on Welch with an open knife in his hand at the time Welch struck the fatal blow.

The record shows that the appellant, along with eight or nine other Negroes who were present at the scene of the homicide, were called to testify as witnesses before the grand jury and gave testimony concerning the homicide. Several witnesses, including the appellant, testified that the deceased was advancing on Welch with an open knife at the time Welch struck the fatal blow. Some of these witnesses, however, came before the grand jury again on the next day and testified that they saw no knife at the time the fatal blow was struck, and that they had lied when they stated to the grand jury during their first appearance before the grand jury that the deceased had a knife in his hand when the fatal blow was struck. But the appellant, upon being recalled for further questioning, refused to change his story and again stated that the deceased had a knife in his hand and was attempting to use it at the time Welch struck Griffin with the lug wrench. The grand jury returned indictments against Welch for murder and against Nash for perjury.

The evidence offered on behalf of the State during the perjury trial consisted of the testimony of two members of the grand jury, which investigated the homicide and returned the perjury indictment, and several other witnesses who were present at the scene of the killing when the fatal blow was struck.

E. B. Goza, the foreman of the grand jury, testified that the appellant was called to testify as a witness before the grand jury, and was questioned at length concerning the altercation or fight which resulted in the death of the deceased. Goza stated that the appellant testified that he was present and an eye witness to the events which led up to Clarence Griffin's death; that the appellant testified that Johnny Welch and his first cousin Floyd Greer were engaged in an argument near the roadside over the fact that Johnny had pulled a shotgun on Floyd at one time; that Clarence came

out of the house and cursed Johnny, and Johnny told Clarence not to curse him any more; that Clarence then cursed Johnny again and went in his pocket and got a knife and opened it and came at Johnny with the knife; and then it was that Johnny hit him. The testimony of the other member of the grand jury was substantially the same as that of the foreman.

Six witnesses testified for the State on the factual issue as to whether or not Clarence Griffin was advancing on Welch with an open knife in his hand at the time Welch struck the fatal blow.

Floyd Greer testified that he was present at the scene of the homicide and that he saw Johnny hit Clarence with the lug wrench; that Clarence had his hands in his pockets and he did not see a knife at any time. James Lee Reed, also known as "Bo Dillon", testified that he was standing close by when Johnny hit Clarence with the lug wrench; that Clarence did not have a knife in his hands and was not threatening Johnny in any way. Reed admitted that he had not told his story the same way when he first appeared before the grand jury. Reed stated that he had told the grand jury that Clarence had a knife, but that story was not true.

Wayne Ragsdale testified that he was present at the scene of the killing, but he did not see Johnny hit Clarence. He stated that he heard Johnny say, "Clarence get back." But he did not see Clarence with a knife, and he did not see Clarence's son Leonard with a knife. Ragsdale admitted that he had testified at Welch's committing trial in December 1961, and that he had stated at that time that Clarence and Gilbert Riley and Clarence's son, Leonard Griffin, had knives. Leonard Griffin, Clarence Griffin's son, testified that he was present when Johnny hit Clarence with the lug wrench; that Clarence did not have a knife in his hand at any time and made no threats against Johnny. Leonard, however, stated that he saw a knife on the ground after Clarence

had fallen, and he identified the knife introduced in evidence as his daddy's knife. Douglas Riley and Gilbert Riley also testified as eyewitnesses to the affray. Neither of them saw a knife of any kind.

Rickey Dodd was the first witness to testify for the defendant. He stated that he was at the scene of the killing, but he was not an eyewitness to the affray. He stated that he did not see just what happened, but he heard Johnny Welch say, ''Don't come on me'' and he heard Clarence's son say, ''Why did you hit my father?'' He then went out to the roadside — it was about 9 o'clock; and he saw Johnny standing off from Clarence. He walked over and told Johnny to get in the car. Clarence's body was lying on the ground beside him, about a foot away. Dodd stated that he picked up the knife and called to A. J. Hall and said, ''Here is the knife I found.'' He then closed the knife and stuck it in his pocket. He did not know whose knife it was. It was Saturday night, and he carried the knife home and kept it until Monday morning, when he wrapped it up in a piece of brown paper and sent it to Mr. Billy Horn, the deputy sheriff. Dodd stated that the car he got in after the killing was his brother's car, that Johnny Welch got in the same car, and Johnny showed him a slight cut on his neck and said, ''See where Clarence cut me.'' Dodd stated that he had testified before the grand jury and had told the same story there.

The defendant Nash was duly sworn and testified as a witness in his own behalf. Nash testified that he was 18 years old, and that he lived on Mr. Conner Atkinson's place; that he had known Clarence Griffin and Johnny Welch since he was about 10 years old. Nash stated that he was present when Johnny hit Clarence with the four-way lug wrench; that Johnny was standing by the roadside talking to his cousin, Floyd Greer, and Clarence came out of the house and cursed Johnny; that Johnny told Clarence not to curse him again; but

Clarence continued to curse Johnny and got his knife and opened it and had it in his hand down by his side. Nash stated that Johnny told Clarence again not to curse him any more, and Clarence then swung his hand toward Johnny, and Johnny hit him with the four-way lug wrench. Nash stated that he had been before the grand jury three times and had never changed his story because he was telling the truth. That was the way he saw it and that was the way he heard it. Nash was asked whether Mr. Atkinson tried to get him to tell anything that was not so. He stated that he did not. On cross-examination Nash stated that he lived in a house with Johnny Welch and Johnny's mother.

After the defendant had rested his case the State called Johnny Welch to testify as a witness in rebuttal. Johnny was asked the direct question whether he ever saw Clarence Griffin with a knife in his hand. The defendant's attorney objected to the testimony on the ground that the testimony was not rebuttal testimony. The objection was overruled; and Johnny was then asked, "Did Clarence have a knife there in his hand at any time just before you hit him?" His answer was, "I didn't see it." Johnny stated that he had pleaded guilty to a charge of manslaughter.

The appellant's attorneys have assigned and argued several points as grounds for reversal of the judgment of the lower court. It is first argued that the court erred in granting the State two instructions which purported to state the degree of proof required to convict, but which failed to inform the jury fully as to the quantum of evidence required to convict in a perjury case.

The record shows that the State obtained two instructions relating to the degree of proof required to convict the appellant of the crime charged in the indictment. In the first instruction the court charged the jury for the State that they did not have to know that the defendant was guilty before they could convict him;

that it was only necessary that they should believe from the evidence beyond a reasonable doubt that he was guilty. In the other instruction complained of the Court instructed the jury for the State that, if they believed from the evidence in the case beyond a reasonable doubt that L. W. Nash at the time and place alleged in the indictment, and before the grand jury of Attala County, was under oath to tell the truth, and "did then and there before said grand jury willfully, feloniously and corruptly swear, testify and affirm falsely, knowing the same to be false * * * that Clarence Griffin had a knife in his hand and was threatening Johnny Welch immediately prior to the time Johnny Welch struck Clarence Griffin a fatal blow * * *," then it was the sworn duty of the jury to find the defendant guilty.

██ ██ In accordance with general rules of law governing instructions in trials of criminal offenses, instructions in prosecutions for perjury must be clear and not confusing. The court should inform the jury of the material facts that must be established to sustain a conviction, and as to the number and corroboration of witnesses required to support a conviction for perjury. 41 Am. Jur., 40, Perjury, Sec. 72.

██ ██ This Court has held in a long line of decisions that, although the other allegations of the indictment may be proved by a single witness, the falsity of the allegedly perjured statement must be established by the testimony of at least two witnesses or by one witness and corroborating circumstances and a conviction for perjury may not be secured and sustained on the uncorroborated testimony of one witness to the falsity of the allegedly perjured statement on which the perjury is assigned. Brown v. State, 57 Miss. 424; Lea v. State, 64 Miss. 278, 1 So. 235; Saucier v. State, 95 Miss. 226, 48 So. 840; Lee v. State, 105 Miss. 539, 62 So. 360; Johnson v. State, 122 Miss. 16, 84 So. 140; Wilbur

v. State, 151 Miss. 837, 119 So. 303; Chenault v. State, 154 Miss. 21, 122 So. 98; Horn v. State, 186 Miss. 455, 191 So. 282; Clanton v. State, 210 Miss. 700, 50 So. 2d 567; Tribble v. State, 210 Miss. 604, 50 So. 2d 148.

██ █ In neither the instructions for the State nor the instructions for the defendants did the court in this case instruct the jury as to the quantiative evidence rule in perjury cases. This Court has held in several cases that a failure to give such an instruction is not only error, but reversible error. Saucier v. State, supra; Wilbur v. State, supra; Chenault v. State, supra.

This case is entirely unlike the cases of Vance v. State, 62 Miss. 137, and Gordon v. State, 158 Miss. 185, 128 So. 769, which is cited by the attorney general in his brief. In the Vance case there was one witness who testified to the fact of perjury, in which he was corroborated by the defendant's own testimony, and the Court held that since his guilt was demonstrated by his own testimony the omission of the rule of law complained of was harmless error. In the Gordon case, the defendant offered no witnesses in his own behalf, but rested the case upon the State's evidence; and the Court held that although the jury should have been instructed as to the quantum of evidence required in a perjury case, it was manifest that the want of such instruction in that case did not harm the appellant for the reason that the evidence measured up to the requirements of the rule as to the quantum thereof necessary to sustain a conviction.

In the case that we have here, there was a sharp conflict in the testimony of the State's witnesses and the testimony of the defendant's witnesses on the issue as to the falsity of the defendant's testimony before the grand jury. At least two of the State's witnesses admitted that they had told a different story when they testified at the committing trial of Johnny Welch in December or before the grand jury which convened in

March. The jurors empaneled to try the perjury case were the sole judges of the credibility of the witnesses and the weight to be given to the testimony of each witness. It was important that the jurors be correctly informed as to the "quantity" of proof required to authorize a conviction for perjury; and the State, somewhere in its own charges, should have asked that the jury be informed that, before they could convict, it must be shown to their satisfaction by the testimony of two witnesses or the testimony of one witness and corroborating circumstances that the appellant's allegedly perjured testimony before the grand jury was false.

For the errors in the instructions indicated above, the judgment of the lower court is reversed and the cause remanded.

Reversed and remanded.

*Lee, P. J., and Gillespie, McElroy and Jones, JJ.,* concur.