SMITH, Justice,
dissenting:
This case had its genesis in William Floyd Hale’s jury service during the November 29, 1988 Lee County trial of James Wright, Sr., charged with the murder of his wife. At the center of the controversy is the issue of Hale, who, after having taken an oath to truthfully answer all questions propounded to him by the trial court and attorneys during voir dire examination, according to the State, wilfully and intentionally failed, by his silence, to answer numerous significant and material questions, which ultimately gained Hale access to the petit jury trying Wright for murder. Wright’s trial ended in a hung jury with an 11-1 vote, Hale being the lone vote for Wright’s acquittal.
Although Hale raised seven issues on appeal, the majority correctly concludes that only one issue warrants discussion by this Court. The majority, primarily relying upon Hogan v. State, 516 So.2d 474, 478 (Miss.1987) and Nash v. State, 244 Miss. 857, 147 So.2d 499, 502 (1962), opine that the trial court committed reversible error by failing to instruct the jury in accordance with the “two witness” rule as required in perjury cases.
After a careful review of the briefs and trial transcript of this case, primarily based upon Gordon v. State, 158 Miss. 185, 128 So. 769 (1930), I must part company with the majority. The facts, evidence and testimony clearly complied with the “two -witness” rule. The “two witness” rule requires that perjury *539 must be established by the testimony of two witnesses, or by one witness and corroborating circumstances. Nash, at 866, 147 So.2d 499. Sufficient witnesses and corroborating circumstances were presented against Hale by the State, thus satisfying Hogan and Nash requirements.
Hale primarily claimed that he was not properly convicted of perjury as defined by Miss.Code Ann. § 97-9-59 (1972) and that the District Attorney’s Office was guilty of misconduct in selective prosecution of Hale.
Hale also suggests that he was hard of hearing, requiring the use of a hearing aid, although, according to Hale, he had lost his government issued hearing aid at the time of the Wright trial. Additionally, Hale suggests that maybe he did not hear the questions or thought that they did not apply to him. Next, Hale suggests that he was at worst guilty of mere negligent omission in his failure to respond to any of the material questions propounded to him by the court and trial attorneys. Hale even suggests the possible lesser included offense of criminal contempt instead of the perjury charge of which he stands convicted by the jury.
Under the oath taken by Hale as a juror, he swore that he would truthfully answer all questions propounded to him concerning his qualifications as a juror. After being impaneled, Hale took an additional oath to well and truly try all issues submitted to him as a juror and a true verdict render on every case wherein he participated.
The State maintained that after taking such oath, Hale wilfully and intentionally did not respond to material questions touching his qualifications as a juror: He deliberately chose not to answer questions concerning his association with attorney Roy Parker and Parker’s son and chief investigator, John Parker and his prior representation on four cases by Roy Parker. Hale also denied to other Wright jurors that he even knew Roy or John Parker, had discussed Wright being a good, honest citizen who could not be guilty of murder, prior to trial with his very best friend Dwayne Spencer; that Spencer knew in advance of this discussion about Wright that Hale had been summoned for jury duty on the Wright trial and talked to him prior to Hale’s serving on the Wright jury; that Hale had formed preconceived intentions of not voting guilty, even though he told other jurors that he knew Wright killed his wife; that Hale tried to sabotage the State’s case by deliberately criticizing the State’s evidence to a fellow juror, in violation of the trial court’s instructions to the jury, not to discuss the case with each other until they retired to the jury room to commence deliberations of their verdict; and that he twice signaled to John Parker while the jury was still deliberating its verdict, which conduct was observed by other jurors who confronted Hale in the jury room, prompting Hale to further refuse to discuss the case and state to the other jurors “I’m not going to vote guilty, that’s the way it is and we can just sit her (sic) ‘til Christmas.”
An examination of the record is helpful indeed regarding whether the State did in fact offer at least two witnesses or one witness and other corroborating circumstances, thereby fully complying with the “two witness” rule.
The majority has primarily covered most of the pertinent questions asked of the jurors during voir dire. However, there remain several other' questions to which Hale also failed to respond. Twice, Judge Gardner asked if anyone had been represented by the attorneys, including Roy Parker. The judge while testifying as a subpoenaed witness in this case was asked to refer to the Wright trial transcript and state to the jury his last catch all question asked at the conclusion of several hours of extensive voir dire. Judge Gardner responded by reading the following question that he had posed to the Wright jury:
Of course, we have gone through several hours of voir dire and many questions have been directed to you to determine what your particular circumstance was, with reference to the lawyers, the kind of case, every imaginable circumstance has been explored by these questions. As I told you when we started, the object of all of this is to select a jury who can and will give both the Defendant and the State of Mississippi a fair trial. A jury who has no connection with this case or anybody involved in it, *540 who has no fixed opinion about how it should be decided or what any of the facts are. A great number of you have responded to various of these questions. Are there now any of you who, for any reason, feel that you cannot and should not sit as a juror in the trial of this case, and that you have not responded during the course of the examination? Do you have any other or a different response to any of the questions?
Whereupon the prosecutor asked Judge Gardner the following question:
Q. Has the Defendant in this case today, Mr. Hale, responded at this point to any question, your Honor, during this voir dire?
A. No, sir, he did not.
Judge Gardner also posed the following questions to the Wright jurors:
Do either of you, because of anything you might have heard, seen, read, or whatever, have any opinion whatsoever about the way this case should be decided?
Is there any reason, and I have attempted to cover all the circumstances that I can imagine, is there anything at all, not previously talked about, that you think would influence you unduly, or cause you to not be fair to either side. Both the State and the Defendant are entitled to a fair trial.
Judge Gardner, referring to the transcript, stated that Hale did not respond to a single question and that he had no reason to believe that Hale did not understand the questions. Although Hale did not respond to any questions by the judge or attorneys during voir dire he had fellow jurors around him who did respond. Jurors responded to the questions of whether attorney Roy Parker had ever represented any of them. One responded that Roy Parker had represented he and his parents 15 to 16 years before. Other jurors responded about having fixed opinions. Did Hale, a 28 year retired military veteran, who attained the rank of major, legitimately not understand any of these numerous questions asked of the jurors? The jury was not persuaded and neither is this dissenter.
Hale suggested he was hard of hearing, might not have understood the questions, or felt they might not have applied to him. Hale claimed that he had to keep asking District Attorney John Young to speak up louder. Yet, when handed an official transcript of the voir dire and asked to show the court where the record revealed that he had asked such a question, Hale refused to review the record. Thereafter, Hale promptly changed his story and claimed that he motioned for the attorney to speak up when asking questions of the jury. The official transcript showed other occasions where identified jurors raised their hands, stood up, or made similar gestures in order to give affirmative responses. But, the record failed to note where Hale was identified as a juror requesting or responding by any such gesture or motion. Regardless, the record does not reveal that Hale ever advised the judge, attorneys, or anyone else that he was hard of hearing.
Although Hale claimed to not having heard some questions, he admitted hearing some of the questions that were specifically pointed out to him. Hale even admitted on cross-examination that, “I thought I understood all the questions, yes sir.”
Concerning his failure to respond to knowing Roy Parker or John Parker and in not disclosing Parker’s prior representation, Hale appeared very evasive. The State offered eight witnesses to refute Hale’s claim to fellow Wright jurors that he did not know the Parkers as well as Hale’s non-response to the same questions posed during voir dire. Mildred Pearce, Circuit Clerk of Lee County produced case files showing Hale as a party in four different cases filed in Lee County and Roy Parker as his attorney. Hale claimed he always dealt with associates in Parker’s office, rather than Roy Parker. However, regarding one of the eases, Hale was confronted by the assistant district attorney with evidence of a notarized document Hale had signed indicating that he had signed the document in front of Roy Parker. Parker’s signature was on the document too.
The State’s evidence also showed that Roy Parker had actually represented Hale in one of the cases which resulted in a trial without a jury conducted with Hale present. The record reveals that when Hale was confront *541 ed on cross-examination with such evidence the following exchange took place:
Q. Now, you have seen one of the ones, one of the trial dockets, one of your three eases that’s been introduced here. Do you recall that one of them actually went to trial without a jury? Do you remember that testimony being introduced here?
A. I remember the testimony, the thing that you presented, but I don’t recall ever going to court with Mr. Parker, no, sir.
Q. It’s in the Court record, Mr. Hale.
A. All right.
The State proved Hale had built an addition to Roy Parker’s house and had carried materials to a remodeling job that his son Von had completed on Parker’s law office.
Hale claims that he had no preconceived opinion of the Wright case due to things he might have heard was countered by the State’s evidence offered by the testimony of Dewayne Spencer, Hale’s very best friend. Spencer stated that Wright was an employee of Spencer during the summer of 1988 when Wright was indicted for the murder of his wife. Spencer signed as a surety on Wright’s $50,000 bond. Spencer clearly had a vested interested in the Wright case. Spencer testified that Wright was a good friend and a good employee. He stated that he and Hale were in a business venture together at that time. He considered Hale as a “very close friend.” Spencer initially told the jury that he assumed that he and Hale had talked about Wright and the murder charge, but when confronted by the assistant district attorney with a transcript of his previous grand jury testimony, Spencer confirmed that he and Hale talked prior to the Wright trial, while Wright was under indictment. Spencer admitted that he was interested in Wright’s case, because he was Wright’s friend and because “I did not believe Wright was guilty, it surmises that I probably would have or could have told Hale that. If I told him anything, I probably did.” Spencer confirmed that he told Hale that Wright was honest, dependable, never lost his temper, and that Wright was the only employee he had ever given the key to his business. Finally, and most importantly, Spencer stated:
“Floyd told me he was coming to the jury selection ... that his name was on the list on the trial of the Wright case. I’m sure Hale assumed I had been subpoenaed as a character witness for Wright.”
Just as quickly, Spencer “back stroked” out of that statement claiming that: “At that time, that’s an incorrect statement by me”
... Regardless of what Spencer assumed, Spencer knew that he (Spencer) had been subpoenaed as a character witness for Wright. Spencer also admitted that his wife and Mrs. Hale attended the Wright trial.
Hale’s conduct with other jurors during trial and deliberations eventually aroused his fellow petite jurors suspicions. Some of those jurors reported their concerns to Judge Gardner, who ultimately commenced an investigation of Hale’s conduct.
The State introduced witnesses who testified to Hale’s behavior during the jury’s deliberations of the Wright case. Grace Fair-ley testified that Hale denied knowing either Roy or John Parker. She further confirmed that Hale had pointed out his wife seated in the courtroom during trial and also pointed to a couple seated next to his wife and referred to them as very best friends. The jury could have easily inferred this couple to be Dewayne Spencer and his wife. Fairley also confirmed that juror Dot Corbett was crying and upset over the two finger signals by Hale to John Parker. Fairley confirmed that Corbett confronted Hale stating: “I can’t believe you did that.” Fairley stated that Hale did not respond to Corbett’s charge. Fairley also testified that she too confronted Hale stating:
Mr. Hale, this is the second time you have lied to us, and that if we are ever going to solve this problem,. that we are going to have to be honest, at least with each other.
Fairley stated that Hale did not respond to the allegation, but that his face got red and he simply kept quiet.
Juror Celeste Turner testified that foreman David Morgan confronted Hale about the two finger signals to John Parker. She stated that Hale admitted Wright was guilty, *542 but that he denied knowing what Morgan was talking about and that afterwards, Hale refused to discuss anymore theories about the case. Turner stated that Hale told all jurors: - _
I’m not going to vote guilty, that’s the way it is and we can just sit her (sic) ’til Christmas.
David Morgan, foreman of the Wright jury, testified that on one of the trips from the jury room to the courtroom, he observed Hale flashing the two finger signal to John Parker who nodded in response. Morgan confirmed that although he did not initially confront Hale on Friday when he observed the signal. Morgan did confront Hale on Saturday about his behavior. Morgan said that Hale denied knowing what he was talking about and that he then told Hale: “You’re lying. I said, I saw you do it. You are lying to yourself and don’t lye (sic) to me about it too.” Morgan stated that the vote at that time was 11-1 with Hale being the lone vote for acquittal. A note was then sent to Judge Gardner stating that the jury felt that they had done everything they could to arrive at a verdict, but could not do so. A mistrial was then declared by the court.
Our voir dire procedure in a trial court setting requires collective voir dire of prospective jurors. The very setting proscribes that silence is taken as an answer. Jurors respond audibly, with upraised hands, by standing or any other means of letting the trial judge and attorneys know when they need to respond with affirmative answers. Those who have negative answers need not do anything. By refusing to respond to repeated questions bearing directly upon his qualifications as a juror, which the oath required, Hale’s conduct amounted to an affirmation as required by the statute. See People v. Meza, 234 Cal.Rptr. 235, 188 Cal.App.3d 1631 (1987) wherein that court held:
[t]he principal question ... whether a prospective juror, who has taken an oath that he will “well and truly” answer questions put to him concerning his qualifications as a juror, can commit perjury by concealing his kinship with the defendant.
Voir dire is a most important portion of a jury selection process. The trial court and parties deserve candor on the part of potential jurors. Simple negligence or omission by a juror is one thing, but wilful and deliberate conduct.in not answering material and relevant questions is another question altogether. If voir dire wasn’t so important and material the court would not waste its time on such a process. The procedure would be to simply call in twelve people and a couple of alternates and proceed with the trial.
The State proved its charges of perjury against Hale by the testimony of more than two witnesses, plus corroborating documentation and circumstances sufficient under our statute and case law. State v. Boratto, 80 N.J. 506, 404 A.2d 604, 609 (1979), wherein that court stated:
In this case, however, there were several witnesses, both expert and lay persons, who testified as to the falsity of the matter with respect to which Silverman allegedly swore. There was corroborating evidence as well. No special instruction with respect to the evidence of perjury was called for in these circumstances. The jury was instructed that it must conclude beyond a reasonable doubt that perjury occurred in order to return a guilty verdict on that charge.
Boratto is analogous to the case sub judice. The State complied with the two witness rule. The fact that no specific instruction on the two witness rule was given the jury by Judge Russell was harmless in view of the witnesses and corroborating evidence submitted to the jury. Such failure to specifically so instruct the jury is not necessarily reversible error. See, Gordon, 158 Miss, at 187, 128 So. 769. The Hale jury was adequately instructed that all material elements of the offense of perjury must be proven beyond a reasonable doubt in order for the jury to return a guilty verdict of perjury.
Hale wilfully and intentionally did not truthfully respond to the questions propounded to him by the court and attorneys in accordance with the oath that he had taken.
Hale’s prior association with the Parkers, and Roy Parker’s prior representation of Hale should have been revealed by Hale to *543 the trial court as requested during the voir dire.
Hale’s very close friendship with Spencer and Spencer’s pre-trial discussion with Hale, knowing Hale was to be a juror on the Wright case, wherein Spencer told Hale that Wright was an honest person who could not be guilty of murdering his wife was most definitely a circumstance of potential adverse influence on a juror which mandated Hale to report to the trial judge.
Finally, Hale’s actions both during trial and during jury deliberations certainly allowed Hale’s jury to conclude that Hale had preconceived ideas about Wright, sufficient to influence his vote to the point that although Hale did believe Wright murdered his wife, he was simply not ever going to vote guilty.
The jury received sufficient evidence and instructions on the law thus were justified in finding Hale guilty of perjury.
I respectfully dissent.